Stevens v. Smith.

---

R. S. STEVENS *v.* VICTORIA SMITH.*

*Error from Shawnee County.*

*Held* that a deed duly acknowledged, dated August 14th, 1860, from one of the Reservees mentioned in the 6th Section of the Treaty with the half-breeds of the Kansas Tribe of Indians, of June 3d, 1825, to lands reserved by said treaty to said Indians, it not being the mode of conveyance pointed out by Section 2, of Act of Congress of May 26th, 1860, was void, and *held* that it was properly rejected as evidence in an action brought by the grantor therein against the grantee therein to recover possession of land therein described.

At the time of the execution of the deed, the title to these lands was by the treaty and Section 1 of Act of Congress of May 26th, 1860, vested in the then living reservees, and the Secretary of the Interior was by Section 2, authorized to sell the same for the benefit of the reservees, the proceeds of which under Section 3, were to be paid to the reservees or applied for their benefit.

The treaty and this act of session were intended to give the reservees full and complete title but with restrictions as to the mode of conveyance.

The removal of these restrictions by joint resolution of Congress of July 17th, 1862, cannot be construed to make a void conveyance valid.

The facts of the case sufficiently appear in the opinion of the Court.

*Wilson Shannon* argued the case for plaintiff in error, and presented the following :

By the 6th Article of the Treaty between the United States and Kansas Tribe of Indians of June 3d, 1825, (7, *U. S. Stat. at Large,* 244-5,) certain reservations are

---

*This case presenting the same points as those of R. S. STEVENS *v.* PE-LA-GU DE AUBRIA and R. S. STEVENS *v.* BELL-MARE, and, having been decided at the same time, a report of but one is presented. REP.

made one mile square, to certain half-breed Indians named. The defendant in error was entitled to one of said reserves, to be located on the north side of the Kansas river, numbered in the order named in the Treaty. They were surveyed, located and numbered according to the Treaty. The Government always construed this Treaty as giving to the reservees only a life estate, while the reservees always claimed it was the intent of the Kansas nation to give to the reservees an absolute title in fee simple. This construction was sanctioned by the Kansas nation. But to remove all doubt as to the title Congress by Act of May 26th, 1860, ( *U. S. Stat. of* 1860, *p.* 21, *Sec.* 1,) enacted that " all the title interest and estate of the United States is hereby vested in the said reservees who are now living, to the land reserved, set apart and allotted to them respectively by Art. 6, of said Treaty, and in case any of said reservees named in said 6th Art., are deceased, leaving heirs, then all the title, interest or estate of the United States to the land allotted to such deceased reservees, is hereby vested and confirmed in such persons as shall, by the Secretary of the Interior, be decided to be the heirs of such deceased reservees." " But nothing herein contained shall be construed to give any force, efficiency or binding effect to any contract in writing or otherwise for the sale or disposition of any lands named in this act heretofore made by any of the said reservees or their heirs."

There is a second and third section to this Act but neither interfere with the first above set forth.

By a resolution of Congress of 1862, [2 Sess., p. 628,] Secs. 2-3, Act May 26th, 1860, are repealed, and so much of the above Section as authorizes the Secretary of the Interior to decide what persons are heirs to deceased reservees. This leaves the granting part of the act of 1860 in force. The first Section of the act of 1860, being a grant could not be repealed, by Congress. We claim that the Treaty of 1825 and the Act of 1860 give to the reservees and to the heirs

of deceased reservees an absolute or *fee simple title* to the land. The defendant in error became by virtue of the Treaty and act aforesaid, vested with the absolute fee in the land which had been allotted to him as aforesaid. After the passage of the granting act of 1860, the defendant in error, conveyed to plaintiff the premises in controversy. The plaintiff in the Court below, having made out a prima facie case rested. The defendant below then offered in evidence his deed from the plaintiff below, dated subsequent to the granting act of 1860.

Counsel for plaintiff below objected, and the 'deed was ruled out on the ground that the plaintiff below had ,no right or authority to convey. An exception to that ruling raises the question in this case.

It is provided in Art. 11th of the Treaty of 1825, that "the said Kansas nation shall never sell, relinquish or in any manner dispose of the lands herein reserved, to any other nation, person or persons whatsoever, without the permission of the United States for that purpose first had and obtained. By Art. 1st a large tract is ceded to the United States. By the second Art. a very large tract is reserved out of the cession in the first Art. named for the Kansas nation.

Now, the land which the Kansas nation shall never sell as provided in the eleventh Art. has reference to the National Reservation, specified in the second Section, and has no relation to the individual reservations mentioned in the 6th Art. These individual reservations belonged to individuals. And the *Kansas nation* could not sell them without violating or rendering null and void the 6th Art.

*Judge Pettit* decided in an ejectment suit in Jefferson County, brought to recover possession of one of these sections, by a grantee of one of the reservees, that the reservees had a fee simple title and had a right to sell and vest the fee in the grantee. This decision was made in 1859, and before the passage of the Act of 1860. Since the

Stevens v. Smith.

passage of this Act, there can be no doubt as to the character of the title of the reservees and the heirs of reservees. They had the *fee* and can convey. The very object of the Act of 1860 was to give to the reservees a perfect title—clear of all doubt or dispute.

*J. & D. Brockway*, for defendants in error, submitted on argument the following points:

The deed from defendant in error to plaintiff in error, which was offered in evidence below, was null, and therefore unavailing to show title in defendant below.

The land described in the deed was reserved to the defendant in error, by the provisions of a treaty made on the 3d day of June, A. D. 1825, between the United States and the Kansas nation. The defendant in error remains a member of that nation, is recognized as such by the 6th Article of the treaty, and by Act of Congress of 1860, and by the Government, by paying her an annuity with the other members of the tribe.

By the 11th Section of the treaty it is stipulated that the said Kansas Nation shall never sell, relinquish, or in any manner dispose of the lands therein reserved to any other nation or person or persons whatsoever, without permission of the United States for that purpose first had. *U. S. Stat. at Large*, 245-247.

By the provisions of that section the Indians were to remain under the protection of the United States. By Section 1 of the Act of Congress approved May 26th, 1860, the title of the United States to the land was vested in the reservee. Section 2d prescribes the manner in which the land may be sold, to-wit: by the Secretary of the Interior in accordance with such rules and regulations as may be prescribed by the commissioner of Indian Affairs, and approved by the Secretary of the Interior, and patents to be issued, &c. The first section provides against giving any force to any contract for the sale of the lands theretofore made by the reservees or their heirs.

It is evident it was not intended that any conveyance of these lands should be made by the reservees.    The stipulations in the treaty are positive, especially that the nation should never sell without consent of the United States.

This restriction applies to every member of the tribe. *Goodell* v. *Jackson*, 20 *Johns.*, 694-733.

The Act of 1860, did not abrogate the restrictions of the treaty.    The prohibition continued in force,—the manner of selling was designated in the same Act.    There is no ambiguity in it.    The Statute needs no interpretation.

Where an affirmative Statute provides the particular manner in which an act is to be done, then the Statute by implication forbids its being done in any other manner. 12 *Iowa*, 158; *Shawnee County* v. *Carter*, 2 *Kans. State Rep.*, *p.* 115.

It is a salutary rule of law that all contracts which have for their object anything contrary to the provisions of any Statute, are void, and a contract which contravenes the policy and spirit of a Statute, is equally void, as if against its positive provisions.    *Hunt* v. *Knickerbocker*, 5 *John*, 332-3-4; *Pettits Adm.* v. *Pettits Distributees,* 32 *Ala.*, 288 ; *St. Regis Indians* v. *Drum*, 19 *John.*, 127; *Lee* v. *Glover*, 8 *Cow.*, 189; *Jackson* v. *Wood*, 7 *Johns.*, 290 ; 3 *Ind.*, 494; 8 *id.* 6.

*By the Court*, KINGMAN J.

The defendant in error brought suit to recover possession of a part of the tract of land reserved to the half-breeds of the Kansas tribe of Indians, by the 6th Section of the treaty of June 3d, 1825.

It was admitted on the trial that the plaintiff below was one of the reservees mentioned in that section, and that the premises sought to be recovered in the action were part and parcel of the special tract so reserved to the plaintiff by said treaty, and that said plaintiff was in possession of said premises on the 14th day of August, 1860.

The defendant below, (plaintiff in error,) then produced in Court and offered to read in evidence a deed from the plaintiff below, to the defendant, conveying to the defendant the premises in controversy. The deed bore date August 14th, 1860, and was properly acknowledged on that day.

Plaintiff objected to the reading of the deed, and the objection was sustained.

The only question presented in this case is, whether the Court erred in refusing to permit the deed to be read.

Congress, in legislating upon these lands by Act of May 26th, 1860, had declared in the first section, " That all the title, interest and estate of the United States is hereby vested in the said reservees, who are now living, to the land reserved, set apart and allotted to them respectively by the sixth Article of said treaty."

The second section provides further :

" That in case any of the reservees now living, or the heirs of any deceased reservees, shall not desire to reside upon or occupy the lands to which such reservees or such heirs are entitled by the provisions of this Act, the Secretary of the Interior, when requested by them or either of them so to do, is hereby authorized to sell such lands belonging to those so requesting him, for the benefit of such reservees or such heirs."

The third section provides :

" That the proceeds of the land, the sale of which is provided for by this Act, shall be paid to the parties entitled thereto, or applied by the Secretary of the Interior for their benefit in such manner as he may think most advantageous to their interest."

This was the law in force at the time the deed offered was made, and its construction presents no great difficulty.

The treaty of 1825 and the Act of cession of May 1860, were intended to give to the plaintiff the full and complete

title to the land in controversy. But Congress in the exercise of a guardian care over the interests of this race, and knowing how liable they would be to become the prey of their more covetous neighbors, made such provision in the same law as they deemed would be likely to secure to the reservees the benefit of the lands ceded to them. If they retained possession and made improvements, they and theirs got the benefit of their labors. If they did not desire to occupy and own the lands, then the Secretary of the Interior, at their request, was authorized to sell the same and either pay over the proceeds to the parties entitled thereto or otherwise apply the same for their benefit, as in his discretion might seem best. So that the benefit of it inured to the reservee for whom it was sold. It is evident that Congress intended by the Act of cession to pass the land to the reservees with such restrictions as would prevent the property from being squandered, or the reservees made the victims of the cupidity and adroitness of their more civilized neighbors.

Having designated the particular mode in which the reservees could dispose of their lands, and the guardianship which should be exercised over the disposition of the proceeds, in the same law which ceded the lands, can a sale and conveyance made in any other way be valid? If so, then it was in the power of the reservees to entirely defeat the beneficial provisions engrafted into the law for their protection. The barriers erected by the law to protect and guard the interests of the reservees, would fail of their purpose. The restrictions which entered into and formed part of the grant, would be entirely avoided.

We think that any other conveyance than one made as prescribed by the act of Congress quoted would violate important and essential provisions of that law and would therefore be invalid and void.

By joint resolutions of Congress, of July 17th, 1862, the second and third Sections of the law of 1860 were re-

pealed—thus removing the restrictions upon the alienation of the property. The first Section of the law being a grant could not be repealed, and no attempt is made to do so.

But this removal of the restriction can by no means be construed to make a void conveyance valid. The deed from Victoria Smith to Stevens was therefore properly rejected.

Judgment below affirmed. All the justices concurring.