WILLIAM H. CLARK V. BENJAMIN F. AKERS, *et al.*

1. OTTAWA INDIAN TREATY OF 1862; *Conveyances in Violation of Treaty.* A deed made by an Ottawa Indian for land allotted and patented to him under the treaty of 1862, conveying such land to another Ottawa Indian, at any time prior to July 4th 1867, without the consent of the Secretary of the Interior, was absolutely void, and could not create even an equitable estate in the lands in favor of the grantee, even though he had paid the purchase-money.

2. DEED—DELIVERY; *Evidence of Delivery.* A deed of conveyance for lands takes effect only upon delivery; and ordinarily the date of a deed (admitted to have been delivered) is *prima facie* evidence of the time of its delivery. But where a deed bears one date, and the acknowledgment thereof another and subsequent date, and the date of the recording of the deed is still subsequent to either, it will be held, in the absence of evidence to the contrary, that the deed was delivered at least as early as the day of acknowledgment; and especially so where the words "Sealed and delivered in presence of A. S. L.," are found on the face of the deed immediately succeeding the body of the deed, and preceding the acknowledgment.

3. CONVEYANCE; TITLE; *Deeds Before and After Removal of Disability.* Where an owner of land is legally disabled from selling, conveying, or incumbering the same, except with the consent of the Secretary of the Interior, and where the law provides that "any conveyance or incumbrance of said lands done or suffered," except as provided, "shall be null and void," and such owner executes a deed without the consent of the Secretary of the Interior, and subsequently, after all disabilities and restrictions are removed, said owner executes another deed to another grantee for said land, *held,* that the execution of the second deed, and "willingly putting the same in use as having been made in good faith," is not such a legal fraud upon the first grantee as to prevent the second deed from having full force and effect.

*Error from Franklin District Court.*

EJECTMENT, brought by *Clark,* as plaintiff, against *Benj. F. Akers, Benj. Esterly, Jennie Nugent,* and *E. J. Nugent,* to recover the possession of 120 acres of land. Trial, and judgment for defendants, at the March Term 1874. The facts and proceedings are fully stated in the opinion. The plaintiff brings the case here on error.

*W. H. Clark,* plaintiff in error, for himself.

*John W. Deford,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of an action of ejectment, brought by William H. Clark against Benjamin F. Akers, Benjamin Esterly, Jennie Nugent, and E. J. Nugent, for the recovery of certain real estate. Said real estate consists of 120 acres of land lying in a body, and described as follows: The W.$\frac{1}{2}$ of the N.W.$\frac{1}{4}$ of section 27, township 17, range 20, in Franklin county, and the N.E.$\frac{1}{4}$ of the N.E.$\frac{1}{4}$ of section 28, same township and range. John W. Early was the original patentee of said land. Early executed three separate deeds for this land or portions thereof, which we shall designate as deeds "B," "E," and "F," as they are so designated in the record and in counsel's briefs. The first deed was from Early to John T. Jones for the land in section 27, dated May 23d 1865. This deed we shall designate as deed "E." The next deed was from Early to John T. Jones and Joseph King for the land in section 28, dated May 8th 1866. This deed we shall designate as deed "F." The third deed was from Early to Charles Kinney for the whole of the land, dated December 11th 1871. This deed we shall designate as deed "B." The plaintiff claims title to said real estate under said deed "B." The defendants claim title under deeds "E" and "F." And this entire case depends upon the validity of these three deeds. The court below found in favor of the defendants, and against the plaintiff, and the plaintiff now brings the case to this court. The court below made two sets of findings in this case — the first with reference more especially to the rights of the parties under deed "F;" and the second more especially to the rights of the parties under deed "E;" and in each set of findings the court makes, first, findings of fact, second, findings of law, and then, third, conclusions of law from these findings of fact and law. The first set of findings reads as follows:

And now comes the plaintiff by A. W. Benson his attorney, and the defendant B. F. Akers by H. P. Welsh his attorney, and Jennie Nugent and E. J. Nugent by John W. Deford their attorney: and this cause came on to be heard upon the pleadings and evidence, and to be decided by the court; and thereupon the court doth find the following conclusions of fact and law in this case. From the evidence presented the court finds the following facts:

1st. Under the provisions of the Ottawa Indian treaty of June 24th 1862, the N.E.¼ of the N.E.¼ of section 28, township 17, range 20 in this county, was allotted and patented to John W. Early, an Indian of the Ottawa Tribe.

2d. On the 8th of May 1866, John W. Early, for a consideration of $100, (without the consent of the Secretary of the Interior at any time,) executed and delivered to John T. Jones and Joseph King, Indians of the Ottawa Tribe, a warranty deed for the land herein described, which was recorded on the same day.

3d. On the 10th of November 1867, John T. Jones and Joseph King, for a consideration of $500, executed and delivered to Isaac S. Kalloch a warranty deed for the land herein described; and on the 1st of April 1870 Isaac S. Kalloch, for a consideration of $400, executed and delivered to Benjamin F. Akers a warranty deed for the same premises.

4th. On the 18th of August 1870, John T. Jones, for a consideration of $333.33, executed and delivered to Jennie Nugent a warranty deed for the land herein described; but at and before the execution of the deed, and payment of the consideration therefor, Jennie Nugent had actual notice of the conveyance mentioned in the preceding paragraph.

5th. In the year 1871, William H. Clark and M. E. Cheney, partners in the law business, arranged with Charles Kinney to take deeds for Indian lands in his name in cases where the Indians had attempted to convey their lands and such conveyances were of doubtful validity; and to enable Clark & Cheney to control the titles so taken, Kinney executed to Cheney a general power to convey real estate.

6th. On the 11th of December 1871, John W. Early with intent to defraud John T. Jones and his grantees, for a consideration of $2.50, paid by Clark & Cheney, executed and delivered to Clark & Cheney a quitclaim deed for the land herein described, with the name of Charles Kinney written

therein as grantee, without Kinney's knowledge or solicitation, under the general arrangement hereinbefore mentioned.

7th. On the 23d of April 1873, Charles Kinney, at the request of Clark, without any consideration paid, executed and delivered a quitclaim deed for the premises herein described to William H. Clark, who received the same with actual knowledge of all the conveyances herein described, and with intent to defraud John T. Jones and his grantees, and has willingly put the same in use as having been made in good faith.

The court finds the law applicable to the foregoing facts to be—

1st, That the Ottawa Indian Treaty vested in the patentees an estate in fee in the lands allotted, with certain restrictions against alienation.

2d, That prior to July 16th 1867 the allottees and patentees under the treaty had no right whatever to alienate any portion of their lands except to each other, and then only with the consent of the Secretary of the Interior.

3d, That after the 16th of July 1867 all restrictions against alienation were removed, and the patentees became invested with a title in fee simple to their lands; but the removal of such restrictions gave no force to the prior void deeds or conveyances.

4th, A deed made by an Ottawa Indian at any time prior to July 16th 1867, without the consent of the Secretary of the Interior, was absolutely void, and could not create even an equitable interest in the land in favor of the grantee, even though he had paid the purchase-money, and taken actual possession.

5th, The statute provides "Every person who being a party to any conveyance of any estate or interest in real estate, with intent to defraud prior or subsequent purchasers, and any person being privy or knowing of any such conveyance who shall willingly put the same in use as having been made in good faith, shall be adjudged guilty of a misdemeanor."

6th, Where two persons claim title to the same land, and both claim from the same grantor, and where the oldest deed is the first recorded, the grantor named therein has the better or paramount title; and in an action of ejectment the plaintiff must recover on the strength of his own title; and unless he shows a clear right to recover, he cannot evict the possessor, even where such possessor is a mere trespasser.

12—16 KAS.

From the foregoing the court concludes—

1st, That William H. Clark, having actual notice of the prior conveyances from Early to Jones and King, and from Jones and King to Kalloch, and from Kalloch to Akers, could not obtain from Early an estate in the lands, and therefore cannot recover possession.

2d, That as between Akers and Nugent, both claiming to derive title from the same grantor, and the latter having notice of the prior deed to the former, Akers has shown the better title, and is entitled to the possession as against any claim set up by Nugent.

The second set of findings are substantially the same as the first, *mutatis mutandis*, except as follows: There is nothing in the second set of findings like the sixth finding of law, and the second final conclusion of law, found in the first set of findings. Deed "E" was not acknowledged and recorded on the day of its date, as deed "F" was, but it was dated May 23d 1865, acknowledged January 10th 1866, and recorded April 15th 1868. And because of this difference, the court below made (in the second set of findings) the fourth finding of law hereafter given, and the second final conclusion of law hereafter given, which last-mentioned finding and conclusion are not contained in the first set of findings. They, with the first final conclusion of law contained in the second set of findings, are as follows:

[*Fourth finding of law:*] "A deed or conveyance for lands takes effect only on delivery. The date in the deed is ordinarily *prima facie* evidence of the time of its delivery, but where the deed bears one date, and the acknowledgment one several months later, if recorded, the date of the record would *prima facie* be the date of the delivery."

[*The final conclusion:*] "From the foregoing the court concludes, *First*, That William H. Clark, having actual knowledge of the prior conveyances from Early to Jones, and from Jones to Nugent, could not obtain from Early any estate in the lands; for title cannot pass when the deed is *malum prohibitum;* and therefore in the case at bar Clark has no vested estate.

"2d, That the deed from Early to Jones, dated May 23d 1865, acknowledged January 10th 1866, and recorded April 15th 1868, was delivered at the last-mentioned date, and by

such delivery took effect from that date, and vested in John T. Jones an estate in fee simple in and to the W.$\frac{1}{2}$ of the N.W.$\frac{1}{4}$ of section 27, township 17, range 20."

The sixth finding of fact in the first set of findings shows that the consideration for deed "B" was $2.50. The fifth finding of fact in the second set of findings, (which corresponds to the said sixth finding in the first set of findings,) shows that the consideration for said deed "B" was $5. The deed itself, upon its face, shows it to have been $100. And from the evidence we would infer that it was in fact $10. We think the foregoing is a sufficient statement of the facts of the case for the present. We shall however mention some other facts as we progress with the opinion.

We agree with the court below, that "A deed made by an Ottawa Indian at any time prior to July 16th 1867, without the consent of the Secretary of the Interior, was absolutely void, and could not create even an equitable interest in the land in favor of the grantee, even though he had paid the purchase-money and taken actual possession." Or, as stated in the second set of findings, "A deed made by an Ottawa Indian, of land allotted and patented to him under the treaty of 1862, conveying such land to another Ottawa Indian, at any time prior to July 16th 1867, without the consent of the Secretary of the Interior, was absolutely void, and could not create even an equitable estate in the lands in favor of the grantee, even though he had paid the purchase-money." And therefore we think the said deeds "E" and "F" were wholly void. They were void, not because of any accident, or mistake, or oversight, or irregularity in their execution, but they were void because of a want of power in Early to alienate or incumber his land in any manner or form except with the consent of the Secretary. Early, Jones, and King were Ottawa Indians. Early obtained all the land now in controversy by virtue of the provisions of the treaty with the Ottawa Indians of June 24th 1862, (12 U. S. Stat. at Large, 1237.) By that treaty the Ottawa Indians were to become citizens of the United States on July 16th 1867. By the

treaty of February 23d 1867, however, the time for them to become citizens was extended two years, or until July 16th 1869. (15 U. S. Stat. at Large, 517, article 17.) By the terms of the treaty of 1862 it was provided that —

"Plats and records of all the sections and locations shall be made [by and for said Indians,] and upon their completion and approval proper patents by the United States shall be issued to each individual member of the tribe and person entitled for the lands selected and allotted to them, *in which it shall be stipulated that no Indian, except as herein provided, to whom the same may be issued, shall alienate or incumber the land allotted to him or her in any manner, until they shall, by the terms of this treaty, become a citizen of the United States; and any conveyance or incumbrance of said lands, done or suffered, except as aforesaid, by any Ottawa Indian, of the lands allotted to him or her, made before they shall become a citizen, shall be null and void.* And forty acres, including the houses and improvements of the allottee, shall be inalienable during the natural lifetime of the party receiving the title: *Provided,* that such of said Indians as are not under legal disabilities by the local laws may sell to each other such portions of their lands as are subject to sale, *with the consent* of the Secretary of the Interior at any time." (12 U. S. Stat. at Large, 1240; article 7.)

The patent issued to Early stipulates that the grant of the lands to him is "upon the express condition, and with the limitation, as required by the treaty aforesaid, that the said John W. Early shall not alienate or incumber the aforesaid tracts of land until he shall become by the terms of said treaty a citizen of the United States; and any conveyance or incumbrance of said land, done or suffered by said John W. Early, made before he shall become a citizen, shall be null and void." The consent of the Secretary of the Interior was never given in this case, that Early should sell, convey, alienate, or in any manner incumber any part or portion of his said land. Therefore we think the said deeds "E" and "F" were void. (*Farrington v. Wilson,* 29 Wis. 383; *Stevens v. Smith,* 2 Kas. 243; *Smith v. Stevens,* 10 Wall. 321; *Blue Jacket v. Johnson Co.,* 3 Kas. 354; *Scoffins v. Grandstaff,* 12 Kas. 468; *Clark v. Libbey,* 14 Kas. 435.) This is wholly

unlike the case where a party *has the power* to alienate or incumber his land, and in attempting to do so makes some mistake. In such a case the courts may rectify the mistake, or in many cases would hold that the title passed under the rule of equitable estoppel. But in this case, Early had no power to convey his land except with the consent of the Secretary of the Interior; and as that consent was never obtained, said attempted conveyance must of course be void. But notwithstanding the want of power in Early to alienate or incumber his said land, it would seem that the court below considered said deeds "E" and "F" valid, and therefore that the deed "B" was void. One of the reasons for considering the deed "E" valid, is shown by the following conclusions of law made by the court below, to-wit: "A deed of conveyance for lands takes effect only on delivery. The date in the deed is ordinarily *prima facie* evidence of the time of its delivery, but where the deed bears one date, and the acknowledgment one several months later, if recorded, the date of the record would *prima facie* be the date of the delivery." And therefore, "That the deed from Early to Jones, dated May 23d 1865, acknowledged January 10th 1866, and recorded April 15th 1868, was delivered at the last-mentioned date, and by such delivery took effect from that date, and vested in John T. Jones an estate in fee simple in and to the west-half of the northwest quarter of section 27, township 17, range 20." Now it is true, that "A deed of conveyance for lands takes effect only upon delivery." And it is also true, that "The date in the deed is ordinarily *prima facie* evidence of the time of its delivery." But it has never been held, so far as we are informed, that the date of the record of a deed was *prima facie* evidence or any evidence of the date of its delivery. It has been held in some cases that the date of the acknowledgment of the deed was *prima facie* evidence of the date of its delivery. (*Henry Co. v. Bradshaw*, 20 Iowa, 355, 362; *Loomis v. Pingree*, 43 Maine, 299, 308.) But generally it is held that the date of the deed itself is *prima facie* evidence of the date of the delivery; and this is generally so, although the date

of the acknowledgment may be subsequent to the date of the deed. (*Jayne v. Gregg*, 42 Ill. 413, 416; *Blake v. Fash*, 44 Ill. 302; *Breckenridge v. Todd*, 3 Monroe, 52, 55; *Ford v. Gregory*, 10 B. Mon. 175, 180; *Smith v. Porter*, 10 Gray, 66, 68, 69.) In the case reported in 10 B. Monroe, 180, the court says: "The delivery of a deed is always presumed to have been made on the day of its date, and its subsequent acknowledgment does not change this presumption; but the delivery may be proved to have occurred at a different time." In the case reported in 10 Gray, 68, 69, the court, after holding that the date of a deed is *prima facie* evidence of the time of its execution, says: "It is of little importance that the deed was not acknowledged on the same day on which it purports to have been executed." On the face of the deed which we are now considering, at the usual place for such a thing to be found, the following is found, to-wit: "Sealed and *delivered* in presence of Asa S. Lathrop." Many courts have held that from such words as these, on the face of the deed, a delivery may be inferred. And as these words come immediately after the body of the deed, and immediately before the acknowledgment, why not infer that the delivery was made at some time after the deed was executed, and at some time before the acknowledgment was taken? It is not necessary that a deed be acknowledged in order to be valid. (*Simpson v. Mundee*, 3 Kas. 172; *Gray v. Ulrich*, 8 Kas. 112; *Ogden v. Walters*, 12 Kas. 291.) The acknowledgment of a deed constitutes no part of the execution thereof. It merely furnishes additional evidence of the execution thereof. And the recording of the deed is still further removed from any connection with the execution thereof. In the present case, if the deeds "E" and "F" were delivered on the day that they were acknowledged, or at any time previous thereto, they would be equally as void as though they were delivered on the day that they purport to have been executed. We shall hold that they were delivered at least as early as the day on which the acknowledgments were taken, and therefore that they are void.

But the main reason why the court below considered the deeds "E" and "F" valid, and the deed "B" void, would seem to be, that the court considered Clark and his grantors attempted to perpetrate a fraud upon John T. Jones and his grantees, and that Clark in so doing committed a misde- meanor. The following findings and conclusions of the court below will show this, to-wit: The sixth and seventh findings of fact; the fifth finding of law, and the first final conclusion of law in both sets of findings. The statute supposed to have been violated is § 98 of the crimes act, (Gen. Stat. 336.) The substance of this statute, so far as it is supposed to have any application to this case, is given by the court below in the fifth finding of law. It is a statute enacted for the purpose, among other things, of preventing fraudulent con- veyances. Now whatever may be the character of the trans- actions between Early, Kinney, Cheney, and Clark, in their moral aspect, we are unable to discover that any legal fraud was perpetrated by such transactions. *How* was John T. Jones, or any of his grantees, defrauded? They never had any legal or equitable right to the property in controversy. They had nothing in law. And is it possible to take some- thing from nothing? How could Clark, or any of his grantors, take something from Jones or any of his grantees which neither Jones nor any of his grantees ever possessed? The deeds "E" and "F" were wholly void. They were nothing in law. The rights of all the parties were precisely the same as though they had never existed. Early lost nothing by them, and Jones and King gained nothing by them. Therefore, suppose that Clark has obtained the full title to the land in controversy, then what has he obtained that Jones or King, or any grantee of either, ever possessed? What has he procured from either of them by any transac- tion, fraudulent or otherwise? They have lost no legal right, and are not in any danger of losing any such right from any act of Clark's, and are therefore not in any situation to call Clark's acts fraudulent. Such acts are certainly not legally fraudulent as to Jones and King and their grantees, whatever

they may be in their moral aspect. The court below says that Clark has no title to said land, "for title cannot pass when the deed is *malum prohibitum.*" Now in the language of the court below, why are not the deeds "E" and "F" *malum prohibitum?* They were executed and put in operation in contravention of the provisions of the treaty of 1862. And can it be possible that the ineffectual attempt of Jones and King to obtain Early's land in contravention of the provisions of said treaty shall forever take away from Early all power to ever afterward dispose of his land? This is undoubtedly just what this particular proviso of the treaty was intended to guard against.

We agree with the court below that "In an action of ejectment the plaintiff must recover on the strength of his own title;" but if the said deeds "E" and "F" are void, then under the other facts of this case Clark's title must necessarily be good; and that said deeds "E" and "F" are void, we have already held.

The judgment of the court below must be reversed, and cause remanded with the order that judgment be rendered on the findings of the court below for the plaintiff for the recovery of the property in controversy.

All the Justices concurring.