R. C. CAMPBELL, *et al.*, v. E. H. PARAMORE.

OTTAWA INDIANS, *and Ottawa Treaty; Minors; Removal of Restrictions.* An allottee, under the provisions of the 'treaty with the Ottawa Indians of 1862, belonging to the Ottawa tribe of Indians, who was only sixteen years of age when the treaty with the Ottawas and other Indians of 1867–8 took effect, was nevertheless entitled, under the provisions of article 17 of the last mentioned-treaty to a patent for the land previously allotted to him as soon as he became of full age; and when he so became of full age, all the restrictions imposed by the former treaty upon his power to alienate his land, were removed.

*Error from Franklin District Court.*

EJECTMENT for forty acres of land, bought by *Paramore.* The land is the north-half of the tract described in the agreed statement of facts, quoted in the opinion, *infra.* Defendants *Campbell* and wife denied plaintiff's title, admitted their own possession, and claimed title in fee. Trial at the November Term 1875. Finding and judgment for plaintiff, and defendants bring the case here.

*Wm. H. Clark,* for plaintiffs in error.

*H. P. Welsh,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought by E. H. Paramore, against R. C. Campbell and Helen Campbell, for the recovery of certain real estate. The court below rendered judgment in favor of Paramore and against the Campbells on the following agreed statement of facts:

"It is agreed by the parties to this action that the following are the facts in this case:

"1st. That the E.½ of the S.W.¼ of section 10, township 17, range 19, Franklin county, Kansas, was allotted to Shahna-nib-na-se, an Ottawa Indian, under the provisions of article 3 of the treaty between the United States and the Ottawa Indians, ratified July 28th 1862, (12 U. S. Stat. at

Large, 1237,) and that this was the only land he received under said treaty.

"2d. That said lands were patented to said Shah-na-nib-na-se under the provisions of art. 7 of said treaty, which patent contains the restrictions upon alienation in said article 7 provided.

"3d. That at the time said lands were allotted to Shah-na-nib-na-se, he was nine years of age; and that, on October 14th 1868, he was a minor, of the age of sixteen years, and that he was not a chief, headman or councilman, nor head of a family.

"4th. That on May 13th 1875, Shah-na-nib-na-se, then of full age, for a consideration of $500, sold and conveyed by warranty deed the whole of said E.½ of the S.W.¼ of section 10, township 17, range 19, to E. H. Paramore, plaintiff herein.

"5th. That the defendants are and have been for several years in the possession of said lands, and have made lasting and valuable improvements thereon.

"6th. That the only question in this case is: Were the restrictions upon alienation upon Shah-na-nib-na-se, contained in art. 7 of Ottawa treaty of 1862, removed by art. 17 of Ottawa treaty of 1867, proclaimed October 14th 1868? (15 U. S. Stat. at Large, 517.) If so, the deed from Shah-na-nib-na-se to E. H. Paramore, plaintiff, is valid, and plaintiff ought to recover; if not, judgment should be for the defendants."

We think the judgment of the court below is correct. Under the treaty of 1862, (12 U. S. Stat. at Large, 1237, et seq.,) various allotments of lands were made, to-wit: 2640 acres for a school; 10 acres for a church; 80 acres for each of the two children of the Rev. J. Meeker; five sections for the chiefs, councilmen and headmen of the Ottawa tribe of Indians; 160 acres to each head of a family of said tribe, and 80 acres to each and every other member of said tribe. Article 7 of said treaty provides for issuing patents, with certain restrictions upon alienation, to each of the different persons to whom land was allotted. These restrictions applied, with more or less force, to all the Indians, and to the two Meeker children. (*Clark v. Libbey*, 14 Kas. 435, et seq.) One of said restrictions is as follows:

"And forty acres, including the houses and improvements of the allottee, shall be inalienable during the natural lifetime of the party receiving the title," etc.

By article 17 of the treaty of 1867–8, (15 U. S. Stat. at Large, 517, 518,) these restrictions were to be removed from the Indians in the following words:

"In order to enable the tribe to dispose of their property in Kansas, and remove to their new homes, and establish themselves thereon, patents in fee simple shall be given to the heads of families, and to all who have come of age, among the allottees under the treaties of 1862, so that they may sell their lands without restrictions."

Now it is true, these restrictions were not and could not be removed from Shah-na-nib-na-se under the provisions of said treaty at the time that said treaty took effect; for, at that time, he was only sixteen years of age; and the treaty provided for issuing patents to those only, and removing restrictions from those only, who were at the time of full age. But still we think the treaty applied to Shah-na-nib-na-se, and to every other member of his tribe, and that when he arrived at full age he was entitled to the patent, and then said restrictions were removed. The treaty of 1867–8 evidently intended to remove the restrictions from all of the allottees under the treaty of 1862 who were members of the Ottawa tribe of Indians, and probably did not intend to remove the restrictions from such of the allottees as were not members of such tribe. And the object of removing such restrictions, as expressed in the treaty itself, was, that all the members of the tribe might be able to sell their lands and remove to their new homes in the Indian country. That clause of the treaty above quoted starts out by saying that, "In order to enable the *tribe* to dispose of *their* property," etc. Now the word "tribe," in this place, evidently means the *members* of the tribe, *and all such members;* and the pronoun "their," evidently means and stands for the same thing; and so do the succeeding pronouns, "their," and "themselves." Said clause does not provide for issuing patents at the time of making the treaty, or at any other particular or definite

time; but it provides for issuing patents at some indefinite time in the future—that is, any time in the future. We should therefore read that portion of said clause directly applicable to this question (leaving out that portion not applicable,) as follows: At any time hereafter "patents in fee simple shall be given" "to all who have come of age." And reading the clause in this way, patents should issue to all the allottees of the tribe who are of age, and to all others as they become of age; and the pronouns "they," and "their," in the words, " so that *they* may sell *their* lands without restrictions," would represent all members of the tribe, (including Shah-na-nib-na-se, as well as others,) and would mean the same thing as the previous words "tribe," "they," "their," and "themselves." It would be strange if such were not the case. It would be strange if it was intended that Indians, who were minors when said treaty was made, should never be able to take their property, or the proceeds thereof, "to their new homes" in the Indian country. But this is what the plaintiffs in error (defendants below) claim. We think that when Shah-na-nib-na-se became of full age he was entitled to the patent provided for in said treaty of 1867–8, and that he then had power to sell his land. We presume that the patent was then in fact issued to him. It therefore follows that the title of the defendant in error (plaintiff below) is good, and that the judgment of the court below must be affirmed.

All the Justices concurring.