## A. H. BALDWIN v. THOMAS SQUIRES.

OTTAWA INDIAN LANDS; *Validity of Conveyance made by Patentee.* Where a patentee named Masko conveyed by warranty deed on 29th July 1867, eighty acres of land patented to him under the treaty of 28th July 1862 with the Ottawa Indians, and where the testimony is not preserved, and it does not appear what restrictions upon alienation, if any, were in such patent, or that there were any houses or improvements on the land conveyed, and the only thing in the record in any manner tending to show the class to which the patentee belonged, or the amount of land received by him under the treaty, is a statement in one finding of fact that there appears on the census and allotment-roll the following description, "No. 19, name, Masko, boy aged 15, description of land," (the eighty acres conveyed,) and there is no finding that the name does not appear again upon said roll, or that other land was not also patented to

him, and the court makes what it denominates separate findings of fact, findings of law, and conclusions, and in one of the findings of law finds, "That the restrictions against alienation were removed at the end of five years from the ratification of the treaty, except as to disabilities existing under local law," *held*, that a judgment sustaining the validity of such conveyance will not be reversed.

### Error from Franklin District Court.

ALL necessary facts and proceedings are set forth in the subjoined opinion. The district court, at the May Term 1874, gave judgment in favor of *Squires*, plaintiff. *Baldwin*, defendant, brings the case here.

*Clark & Wilkinson*, for plaintiff in error.

*Judson & Motter*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: Action to quiet title. Decree for plaintiff, and defendant alleges error. The testimony was not preserved, and the case is before us on the pleadings, findings, and conclusions. The land was patented under the treaty of 28th July 1862 with the Ottawa Indians, to one Masko. On 29th July 1867, Masko conveyed by warranty deed; and the case turns upon the validity of that deed. This treaty has been before us for consideration in several cases; *Clark v. Libbey*, 14 Kas. 435; *Clark v. Akers*, 16 Kas. 166; *Clark v. Libbey*, 17 Kas. 634; *Campbell v. Paramore*, 17 Kas. 639; and many of the questions litigated in the district court have been disposed of by those cases. As this case now stands before us, it must be decided by the answer to be given to one question: Is there anything in the findings to show that any portion of this land was inalienable during the lifetime of the patentee? The first finding reads:

1st.—By the Ottawa Indian treaty of 24th June 1862, provision was made that upon its ratification a census of all Ottawas entitled to lands under it should be taken. After the ratification of the treaty July 16th, 19th, 1862, a census was taken, and an allotment of land made. On the census

19—20 KAS.

and allotment-roll prepared and reported to the Secretary of the Interior the following description appears: "No. 19, name, Masko; boy; age, 15; description of land, the west half of the northwest quarter of section 32, township 16, range 19." And afterward a patent was issued by the United States to Masko for the lands borne opposite his name on the census and allotment-roll.

This land was the tract conveyed, and in dispute. There is no other finding descriptive of the title, or interest of Masko; nothing to show what limitations were in the patent; nothing further indicative of the class of allottees to which Masko belonged, or the amount of land patented to him under the treaty. The treaty provided that at the expiration of five years from its ratification the tribal relations should be dissolved, and the several Indians should be deemed and declared to be citizens of the United States, to all intents and purposes, and with all rights, privileges and immunities, and in all respects subject to the laws of the United States and of the state. (12 U. S. Stat. at Large, p. 1237, sec. 1.) Art. 7 of the treaty is as follows:

"ARTICLE VII. * * * And all the above-mentioned selections of lands shall be made by the agent of the tribe, under the direction of the Secretary of the Interior. And plats and records of all the selections and locations shall be made, and upon their completion and approval proper patents by the United States shall be issued to each individual member of the tribe and person entitled for the lands selected and allotted to them, in which it shall be stipulated that no Indian, except as herein provided, to whom the same may be issued, shall alienate or incumber the land allotted to him or her in any manner, until they shall, by the terms of this treaty, become a citizen of the United States; and any conveyance or incumbrance of said lands, done or suffered, except as aforesaid, by any Ottawa Indian, of the lands allotted to him or her, made before they shall become a citizen, shall be null and void. And forty acres, including the houses and improvements of the allottee, shall be inalienable during the natural lifetime of the party receiving the title; provided, that such of said Indians as are not under legal disabilities by the local laws may sell to each other such portions of their lands as are subject to sale, with the consent of the Secretary of the Interior, at any time."

The only permanent limitation on any patentee's power of alienation was, as to "forty acres, including the houses and improvements of the allottee." As to all other lands, as soon as he became a citizen, he had as full power of alienation as any citizen. The five years had passed, and Masko was a citizen, and subject to the laws of this state at the time of the conveyance. He could convey all except the "forty acres." The treaty of 1868 was not yet ratified, and of course its subsequent ratification could not avoid prior conveyances. The findings dispose of the question of minority.

Now if it affirmatively appeared that all the land patented to Masko, was this eighty-acre tract, some interesting and difficult questions might arise. Must the patent *name* the "forty-acre" tract which is *inalienable?* If not, how is it to be selected? Must the patentee make the selection before conveying any? If the patentee has no houses, nor improvements, on any of the land, and no restriction is expressed in the patent, is any of the land inalienable? If a patentee, there being no restriction in the patent, and no houses or improvements on the land, without making any selection conveys the entire tract in one conveyance, is the conveyance void as to all the land, or only as to forty acres? and if void as to forty acres, *which* forty acres? But we think the findings do not show that this eighty-acre tract was all that was patented to Masko under the treaty. It is nowhere expressly so stated, as it was in the case of *Campbell v. Paramore*, 17 Kas. 639. The treaty provides, art. 3, that five sections of land be apportioned among the chiefs, councilmen, and headmen, as the members of the tribe shall in full council determine; that in addition, said last-named persons, and each and every head of a family, should receive 160 acres; and that all other members of the tribe should receive eighty acres each. Now it is probably the fact, that Masko only received the last-named amount, to-wit, eighty acres, the tract in controversy. The description and age, "boy, age 15," would seem to imply this. If he were the head of a family, it would seem as though the description would indicate this;

and as to the chiefs, etc., it is said that the five sections are set apart to them in consideration of many years of service without pay, and a boy of fifteen years cannot have rendered very many years of service. But these are mere probabilities. And before a warranty deed, made by one having the powers of a citizen in respect to conveyance, is held void, it should affirmatively appear that there was some defect in the conveyance, or some restriction as to the title conveyed. The presumptions are against such restriction.

Again, the presumption is that the court ruled correctly; and in what the court denominates "findings of law," as distinguished from its conclusions, it finds, "that the restrictions against alienation were removed at the end of five years from the ratification of the treaty, July 16th 1862, except as to disabilities existing under local law." Now it will be presumed that the evidence showed that this land did not include the forty-acre inalienable tract, rather than that the court found against the validity of any stipulation in the treaty.

Still again: While the treaty provided for a census, it did not prescribe what such census should contain, but left the matter for the direction of the Secretary of the Interior. What he prescribed, the case does not show. Whether his directions were such that the mere description and age indicated the class to which the allottee belonged, we are not advised, and may not conjecture. While it is not probable that a boy fifteen years of age is the head of a family, still it is not impossible. Marriage among the Indians may be celebrated at an early age, and this boy may in fact have been an illustration of young American precocity. Again, we are not advised, and we cannot take judicial notice, of the laws and customs of Indian tribes. The places of chief, councilmen, and headmen may be hereditary, and this boy may in fact have been a chief for years, and selected by the council to share in the five sections. These it is true are mere speculations; but they serve to show that the record is not sufficiently full and specific for us to hold that error affirmatively

appears in the ruling of the district court. In the absence of such showing it must be presumed that it ruled correctly, and the judgment must be affirmed.

All the Justices concurring.