UNITED STATES ex rel. ZANE vs ZANE, et al.

Opinion delivered September 25, 1902.

1. *Indian Lands—Wills—Descents and Distribution.*

Act of Cong. Feb. 8, 1887, Sec. 5 (24 Stat. 388) provides for the allotment of lands in severalty to Indians and also provides that upon the making of such allotments the same shall, in event of death of the allottee pass to his heirs in accordance with the laws of the state of

Kansas relating to descents and distributions, and that any convey-
ance of or contract touching the same made by the allottee shall be
null and void. *Held*, that an Indian to whom an allotment in several-
ty and patent covering same had been issued could not dispose of
same by will, but on his death his land, so alloted, passed to his wife.

Appeal from the United States Court for the Northern District.

JOSEPH A. GILL, Judge.

Action by the United States, on the relation of Jennie A. Zane, against Alonzo Zane and another, to recover certain land. Judgment grants to the relator a portion only of the relief demanded. She appeals. Reversed.

On March 25, 1899, this action was commenced by the plaintiff (appellant here) by filing a complaint at law in the Northern district of Indian Territory, at Miami, against the defendants (appellees here). On April 3, 1899, defendants filed a demurrer to plaintiff's complaint, and on April 4, 1899, plaintiff filed an amended complaint in equity, and also a motion for the appointment of a receiver. In said amended complaint plaintiff alleged that Eli Zane was a Wyandotte Indian, and that the United States, from and after January 1, 1894, held in trust for said Eli Zane during his lifetime, and, in case of his death, for the use and benefit of his heirs, certain lands lying in the Wyandotte Indian reservation in the Indian Territory, and that a patent to that effect was issued to said Eli Zane; that said Zane died about December 20, 1898, and had no descendants, but had a wife, who is the relator; that defendant Alonzo Zane, with his codefendant, Tabitha Zane, and Eli Zane, was living on a portion of said land

at the time of the death of Eli Zane; that Alonzo Zane about said time ordered the relator, Jennie Zane, off of said land, and she was compelled to go elsewhere; that by reason of the influence of defendants Eli Zane was induced to make a will, by which he undertook to dispose of said lands, and to make defendant Alonzo Zane executor of said will; that said will was void, but, notwithstanding, the defendant Alonzo Zane claims the right to hold possession of said lands, and to use the same for the benefit of himself and his codefendant, and said defendant Alonzo Zane interferes with all persons that relator attempts to place in possession of said lands, and defendants continue to live on said lands and use the same; "that under the law regulating the descent and distribution of these lands Jennie Zane is the sole heir to said lands, and is entitled to their use and enjoyment; that said Alonzo Zane and Tabitha Zane are wholly insolvent, and, if allowed to occupy said premises, and to reap the benefits from them, the relator herein will be utterly without remedy." Plaintiff asks that Jennie A. Zane be declared the sole heir of Eli Zane; that the pretended will be declared null and void; that a receiver be appointed, and defendants be enjoined from interfering with the receiver; and that Jennie A. Zane be given possession of said premises, and for costs. On the same day the case was transferred to the equity docket by order of court, and by agreement of parties the case was transferred from Miami to Vinita. On April 17, 1899, defendants filed a motion to require plaintiff to separately state and number her causes of action in her amended complaint, and on April 18, 1899, defendant Alonzo Zane filed an affidavit. On January 15, 1900, demurrer to amended complaint filed. On February 2, 1900, depositions of Eldridge H. Brown, Jennie A. Gulp, and Alonzo Zane filed. On February 24, 1900, demurrer to amended complaint overruled, and defendants allowed 15 days to answer. On April 7, 1900, defendants filed separate answers. Answer of Alonzo Zane admits that Eli Zane at his death was a Wyandotte Indian, and

as such held a patent to the lands in controversy; that he died about December 20, 1898, and that prior to his death he made a will; and that defendants were living upon a portion of said lands at the time of his death; denies the United States has any interest in the lands other than that shown by the patent; denies that he ordered Jennie Zane off of the land; denies that defendants induced Eli Zane to make a will; denies that said will is void and that he is claiming the right to the possession and use of said premises for defendants, or that he is interfering with all persons that relator seeks to put in possession of same; denies "that under the law regulating descent and distributions of this land Jennie Zane is the sole heir to said land, and is entitled to the use and the enjoyment of the same;" denies that defendants are insolvent; denies that the relator has any interest in the lands, or any right thereto. "Further answering, the defendant states that the said will so made by Eli L. Zane was legal and valid in every respect, and the same was admitted to probate in said court as the last will and testament of Eli L. Zane, and that the order admitting the said will to probate is unappealed from and reversed; that the relator, Jennie A. Zane, appeared and contested said will, but that the same was, after a full hearing, admitted to probate as aforesaid. The defendant further states that said will and the probate thereof were fully litigated at the time the same was admitted to probate, and its legality was fully established at that time, and that this court has no jurisdiction, sitting as a court of equity, to annul or set aside said will." Defendant says he and Eli Zane were the sons of his codefendant, and that he makes his home with her, and cares for her; that she is 72 years old, and in feeble health, and has no other home; that his codefendant is a Wyandotte Indian, and that she paid $600 for the improvements on the 80-acre tract on which defendants reside before Eli Zane allotted the same; and that the relator was not the wife of Eli Zane when he allotted this land. It was understood between his codefendant and Eli Zane that said improve-

ments should belong to his codefendant.    The only claim relator has to inherit the property of Eli Zane is that she was his wife. Defendant asks that suit be dismissed by reason of want of jurisdiction, or, in the alternative, that the court divide the property according to the provisions of the will.    The answer of Tabitha Zane is the same as that of Alonzo Zane.    On April 7, 1900, plaintiff demurred to the answer of defendants.    On February 11, 1901, the cause came on for hearing, and the court rendered the following judgment:    "That Eli Zane was a Wyandotte Indian, and owned an allotment under patent from the United States, the lands described in the complaint.    Said Zane died testate, leaving, him surviving, as his widow, the relator, Jennie A. Zane, and without issue.    That said Eli Zane in his lifetime made a will, which was duly admitted to probate.    In this will he devised part of the lands in controversy to his mother, defendant Tabitha Zane, and the other part to his widow, and named Alonzo Zane, defendant, as his executor.    That during the life of the said Eli Zane he and defendant Tabitha Zane lived together, and that she contributed to making the improvements on the allotment, and particularly the portion devised to her. That she is an aged lady, and has no  other home than that she contributed towards making, and which was devised to her.    And the court finds the issues in said cause in part for the relator and in part for the defendant Tabitha Zane; that relator is the legal owner of the premises, and as such is entitled to the immediate possession of all that part of said premises not devised to said Tabitha Zane.    The court further finds the issues in part for said Tabitha Zane; that she is, under said will and devise, by virtue of her contributions towards making said improvements, entitled to an equitable lien, and to hold possession, for her natural life, of all that portion of said premises devised to her in said will, and to reside thereon, and to the rents and profits thereof.    To which finding of the court both parties in open court duly except, and their exceptions

are granted by the court. Now, therefore, it is ordered, considered, and decreed by the court that the relator, Jennie A. Zane, recover immediate possession of all the lands not devised in said will to Tabitha Zane, and that defendant Tabitha Zane hold possession during her natural life of all said premises so devised to her. To which judgment of the court the relator and the defendants duly except, and said exceptions are allowed by the court, and the defendant and relator each given 60 days to prepare and file a bill of exceptions. Thereupon the defendant in open court prays an appeal, which is by the court then and there allowed. Thereupon the relator prays an appeal, in open court, to the court of appeals for the Indian Territory at South McAlester, Ind. Ter., which prayer is granted, and the appeal allowed by the court." On March 6, 1901, plaintiff filed a supersedeas bond, and appealed to this court.

*Preston S. Davis*, for appellant.

*Blue & Wilson*, for appellees.

TOWNSEND, J. This action was commenced at law by the appellant, but subsequently she amended her complaint, and upon allegations of insolvency asked for the appointment of a receiver, for an injunction, and other equitable relief, and thereupon the case was transferred to the equity side of the docket, and proceeded to final judgment. To reverse the final judgment of the court below, appellant has appealed to this court, the only question in the case being as to the ownership of the land described in the complaint. Appellant claims as the heir of Eli Zane, deceased, who died without issue, but who made a will, under and by virtue of which the appellee Tabitha Zane claims a part of the land in

controversy, and the issue is narrowed down to the question whether Eli Zane could dispose of this land, or any part of it, by a will. If he could not, then there is no serious contention but what appellant should recover, and the judgment of the court below should be reversed. If he could make a will of this land, the judgment of the court below should be affirmed. It appears from the complaint that the said Eli Zane was a Wyandotte Indian, and that he held said land under a patent as follows: "Copy of Patent. The United States of America, to all to whom these presents shall come, greeting: Whereas, there has been deposited in the general land office of the United States a schedule of allotments of land, dated January 11th, 1892, from the acting commissioner of Indian affairs, approved by the secretary of the interior January the 14th, 1892, whereby it appears that under the provisions of the act of congress approved February 8th, 1887 (24 Stat. 388), Eli Zane, an Indian of the Wyandotte tribe or band, has been allotted the following described land, viz.: "The east half of the northeast quarter of section twenty, township twenty-seven north, of range twenty-four east, and the north half of the northeast quarter of section twenty-two, township twenty-seven north, of range twenty-four east, Indian meridian, Indian Territory, containing in all one hundred and sixty acres: Now, know ye, that the United States of America, in consideration of the premises, and in accordance with the provisions of the fifth section of said act of congress of the 8th of February, 1887, hereby declares that it does and will hold the land thus allotted (subject to all the restrictions and conditions contained in said fifth section) for the period of twenty-five years, in trust for the sole use and benefit of the said Eli Zane, or, in case of his decease, for the sole use of his heirs, according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his

heirs, as aforesaid, in fee, discharged of said trust, and free of all charge or incumbrance whatsoever: provided, that the president of the United States may, in his discretion, extend the said period. In testimony whereof, I, Benjamin Harrison, president of the United States of America, have caused these letters to be made patent, and the seal of the general land office to be hereunto affixed. Given under my hand, at the city of Washington, this nineteenth day of April, in the year of our Lord, one thousand eight hundred and ninety-two, and of the independence of the United States the one hundred and sixteenth. By the President. (Sgd.) Benjamin Harrison, by M. McKean, Secretary. D. P. Roberts, Recorder of the General Land Office. (Seal of United States General Land Office.)'' Said patent was issued under the provisions of Section 5 of the act of congress approved February 8, 1887, entitled "An act to provide for the allotment of lands in severalty to Indians on the various reservations, and to extend the protection of the laws of the United States and the Territories over the Indians, and for other purposes." Said section 5 is in part as follows: "Sec. 5. That upon the approval of the allotments provided for in this act by the secretary of the interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: provided, that the president of the United States may in any case in his discretion extend the period. And if any conveyance shall be made of the lands set apart and allotted as

herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void: provided, that the law of descent and partition in force in the state or territory where such lands are situate shall apply thereto after patents therefor have been executed and delivered, except as herein otherwise provided; and the laws of the state of Kansas regulating the descent and partition of real estate shall, so far as practicable, apply to all lands in the Indian Territory which may be allotted in severalty under the provisions of this act." Section 5, Supp. Rev. St. U. S. p. 535. It thus appears that under said patent and act of congress the title was in the United States, and that the government of the United States was holding said land for said Zane, or, in case of his death, for his heirs. It does not appear that the government was holding the same for the devisees of said Zane, and we are of the opinion that Zane was powerless to devise the same. The act expressly makes any conveyance or contract by him absolutely void, and upon his death the government, under the act, became the trustee for his heirs, the same as it had been trustee for him in his lifetime. The government, under the act, was to hold said land as trustee for Zane or his heirs for 25 years, and then to issue patent in fee. The only title that Zane had was one of occupancy. That congress has power to place restrictions and limitations on the conveyance and disposition of lands belonging to the Indians has frequently been decided. See Libby vs Clark, 118 U. S. 250, 6 Sup. Ct. 1045, 30 L. Ed. 133; Stevens vs Smith, 2 Kan. 247; Baldwin vs Letson (Kan.) 49 Pac. 619. The statute of descents and partitions of the state of Kansas, which, by the said act of congress of February 8, 1887, is put in force by the following provision of said act, viz: "And the laws of the state of Kansas regulating the descent and partition of real estate shall, so far as practicable, apply to all lands in the Indian Territory which may be allotted in severalty under the provisions of this act,"—is as follows: "If

(14)

the intestate have no issue, the whole of his estate shall go to his wife, and if he have no wife, nor issue, the whole of his estate shall go to his parents." Comp. Laws Kan. 1879, p. 380. There is no dispute that appellant is the widow and heir of Eli Zane, deceased, he leaving no issue, and the act of congress precludes, in our judgment, any one but the heir having the land; and therefore, without discussing the views presented by appellees, we are of the opinion that the case should be reversed, and remanded for further proceedings.

Reversed and remanded.