## In re Heirs of House.

*May 4—May 21, 1907.*

*Indians: Allotment of lands: Death of allottee before patent issued: Power to devise: Who are heirs: Illegitimate children.*

1. Under the act of Congress approved February 8, 1887 (24 U. S. Stats. at Large, 388, ch. 119), an Indian allottee of lands who died within the twenty-five years during which title was to be held by the United States in trust for him had no power to devise his interest in such lands to any person.

2. Under the amendatory act of February 28, 1891 (26 U. S. Stats. at Large, 794, ch. 383), all children of an Indian allottee of lands who dies within the twenty-five year period mentioned, whether such children are legitimate or illegitimate, are made his heirs for the purpose of inheriting such lands, and the children of a deceased illegitimate child are entitled to the share of their deceased parent.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

Thomas House, Sr., an Oneida Indian, died on the Oneida reservation, in Brown county, November 13, 1894. At the time of his death he held a patent to certain lands which were part of the reservation which had been allotted among the Oneidas. The patent provided as follows:

"That the United States of America, in consideration of the premises and in accordance with the provisions of the fifth section of [the act of Congress of the 8th of February, 1887, 24 U. S. Stats. at Large, 388, ch. 119, which provided for the allotment] hereby declares that it does and will hold the land thus allotted (subject to all the restrictions and conditions contained in said fifth section) for the period of twenty-five years, in trust for the sole use and benefit of the said Thomas House, or, in case of his decease, for the sole use of his heirs, according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said In-

dian, or his heirs, as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: Provided, that the President of the United States may, in his discretion, extend the said period."

In 1837 House married according to white man's law one Lydia Archiquette, with whom he lived for about one year. There was no issue as the result of this marriage, and at the end of about a year they voluntarily separated, and Lydia Archiquette thereafter cohabited for a period of about fifty years with another Indian, with whom she raised a large family of children. Lydia Archiquette died before House, but during her life House cohabited with and had children with eight other Indian women. All of these children except two were living at the time of his death. One of these two children left surviving her *Thomas House Ninham,* and the other left surviving her *Simon House* and *William House. Thomas House Ninham* is the legitimate child of his mother. Before the dissolution of the tribal relation by the Oneidas, the deceased adopted *Thomas House Ninham* in accordance with a well-defined custom or law of adoption among the Oneidas. As such son by adoption he was entitled under the laws and customs of the Oneida Indian tribe to the same rights and privileges as a natural-born son. The laws, customs, and rules of the Oneidas and the procedure for their enforcement rested entirely in parol. Permanent marriage of one man to one woman was fully recognized among them and generally observed. There was no law of descent of real property among them.

By a will which has been lost House attempted to devise the lands involved in this action to one of his children. He referred to him in such will as "my son, *Aaron House.*" By another will, attempting to dispose of these lands, he referred to *Thomas House Ninham* as his grandson. House left a number of brothers and sisters surviving him. This proceeding is instituted under ch. 166a, Stats. (1898), for the

purpose of determining who are the heirs of Thomas House, Sr. The above facts are taken from the stipulation made by the interested parties before the county court, and on appeal were stipulated before the circuit court as the facts of the case.

As conclusions of law the circuit court found that *Aaron House,* an illegitimate son of Thomas House, had been legitimated by the will, wherein he was referred to as "my son *Aaron House;*" that *Thomas House Ninham,* by virtue of his adoption by Thomas House, Sr., was entitled to inherit according to the customs and laws of the Oneida Indians the same as any lawful issue of Thomas House, Sr.; that Thomas House, Sr., had no legal capacity to make a will disposing of the real estate in question; that all of the illegitimate children of Thomas House, Sr., were entitled, under the federal statutes, to inherit and share in the real estate of their father the same as though they were legitimate children; and that the children of a deceased illegitimate child were entitled to the share of their deceased parent. From judgment establishing who were the heirs of Thomas House, Sr., which was entered in accordance with the conclusions of law of the circuit court, *Thomas House Ninham* and *Aaron House* separately appeal.

For the appellant and respondent *Thomas House Ninham* there was a brief by *Cady & Strehlow,* and oral argument by *Samuel H. Cady.*

For the appellant *Aaron House* there was a brief by *C. W. Lomas* and *P. H. Sheridan,* and oral argument by *Mr. Lomas.*

For the respondents *William House* of Canada, *Simon House, William House* of Oneida, Wisconsin, *Dolly House,. Thomas House, Jr.,* and *Daniel House,* a brief was filed by *Kittell & Burke* and *M. E. Davis.*

For the respondents *Esther House* and *Henry House* there was a brief by *John F. Watermolen.*

SIEBECKER, J. This is a proceeding under sec. 3873b, Stats. (1898), to determine who are the heirs of Thomas House, deceased. The judgment appealed from declares that all the children named are his heirs for the purpose of taking an interest in the lands allotted to him under an act of Congress approved February 8, 1887 (24 U. S. Stats. at Large, 388, ch. 119), as amended by an act of February 28, 1891 (26 U. S. Stats. at Large, 794, ch. 383). This statute provides for the allotment of lands to Indians, and sec. 5 provides that patents shall issue to allottees. It declares "that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, to his heirs, according to the laws of the state or territory where such land is located," and that a conveyance in fee by patent will be made to the allottees at the expiration of such period, discharged of the trust and free from all charges and incumbrances, and provides that any conveyance of such lands or contracts touching the same shall be absolutely null and void; and further provides "that the law of descent and partition in force in the state or territory where such lands are situate shall apply thereto after patents therefor have been executed and delivered." The amendatory act of February 28, 1891, added the following:

"Sec. 5. That for the purpose of determining the descent of land to the heirs of any deceased Indian under the provisions of the fifth section of said act, whenever any male and female Indian shall have cohabited together as husband and wife according to the custom and manner of Indian life the issue of such cohabitation shall be, for the purpose aforesaid, taken and deemed to be the legitimate issue of the Indians so living together, and every Indian child, otherwise illegitimate, shall for such purpose be taken and deemed to be the legitimate issue of the father of such child."

It is contended in behalf of the appellant *Thomas House Ninham* that the deceased had the right under this act to devise his interest in the lands allotted to him, and that appellant is entitled to them under decedent's will. The power of decedents as allottees to dispose of their interests in these lands is expressly prohibited in the fifth section of the allotment act. It is argued from the provisions of sec. 6 of the act of 1887, providing that when lands are patented to allottees they "shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which they may reside," it follows that the laws of Wisconsin establish and control the ownership and interest of the allottees in respect to such lands. This position has been urged in like cases heretofore and held untenable under the United States dual system of government. In *Matter of Heff*, 197 U. S. 488, 25 Sup. Ct. 506, in an application to the supreme court of the United States for a writ of *habeas corpus*, it was held that, in construing statutes regulating the relationship of the government and the Indians, their subjection to the full control of the United States as its wards must be recognized, and that the judgment of Congress in this field, as expressed in its legislation, must control. In speaking of the provision in this act prohibiting alienation or incumbrance of these lands, and the stipulation "that the grant of citizenship shall not deprive the Indian of his interest in tribal or other property," it is declared:

"These are mere property rights, and do not affect the civil and political status of the allottees. In *U. S. v. Rickert*, 188 U. S. 432, 23 Sup. Ct. 478, we sustained the right of the government to protect lands thus allotted and patented from any incumbrance of state taxation. Undoubtedly an allottee can enforce his right to an interest in the tribal or other property (for that right is expressly granted), and equally clear is it that Congress may enforce and protect any condition which it attaches to any of its grants. This it may do by appropriate proceedings in either a national or a state

court.   But the fact that property is held subject to a condition against alienation does not affect the civil or political status of the holder of the title."

Within the doctrine of this decision the contention that this property of House is not subject to regulation or control except by the law of this state cannot be maintained, and the condition of the grant imposed by Congress, prohibiting alienation, is effective and controlling.   In the case of *U. S. ex rel. Zane v. Zane,* 4 Ind. Terr. 185, 69 S. W. 842, in the court of appeals of Indian Territory, it was expressly held that an allottee under this act who died within the twenty-five year period had no power to alienate or devise the lands so allotted to him or any interest therein.   We deem the principle of these adjudications applicable and conclusive on the question that the deceased held the lands allotted to him subject to the condition imposed by Congress.   Under this condition he had no power to devise his interest therein to any person.

It is said that the trial court erred in construing that part of these statutes which was enacted for the purpose of determining the descent of these lands to the heirs of any deceased Indian.   It was manifestly intended that the word "heir," as used in this part of the act, should include the children of Indians coming within the classes specified, namely, first, the children born to "any male and female Indian [who] shall have cohabited together as husband and wife according to the custom and manner of Indian life." This class of children are to be "taken and deemed to be the legitimate issue of the Indians so living together."   The intent of this provision for the purposes of this act was evidently to make this class of children, who are legitimate under Indian custom and manner, legitimate within the state or territory where they reside, though the laws of such state or territory might not recognize them as legitimate, because their parents were not married according to the laws of such

state or territory.    The other class is comprehended in the phrase immediately following the part last above quoted.    It reads:

"And every Indian child, otherwise illegitimate, shall for such purpose be taken and deemed to be the legitimate issue of the father of such child."

It is urged that the trial court's construction, that they formed a class different from the first, which included all the illegitimate children of the father who were not the issue of him and a female cohabiting together as husband and wife according to the custom and manner of Indian life, rendered the previous class an unnecessary one, because this latter class would include all illegitimate children.    It is evident that this class of children is constituted of those who are illegitimate according to Indian custom and manner as well as by the law of the state or territory where they reside, and as such might accordingly not occupy the same status as to the right of inheritance that the first class do, whose legitimacy recognized according to Indian custom and manner is imported into the state or territory where they reside and given effect for the purpose of this act.    Recognition of this difference in their status by Indian custom and manner and the law of the state or territory makes the act inclusive of all Indian children not born in lawful wedlock according to the law of the state or territory of their residence.    It seems that Congress, in the evident purpose of caring for all Indians as its wards, whether legitimate or illegitimate, framed this statute so as to include all Indian children, legitimate or illegitimate under the codes of the Indians or of the state or territory where they reside.    There is no question under this interpretation of the statute but that all of the children of Thomas House, deceased, are his heirs for the purpose of inheriting the lands allotted to him under the act of Congress. This disposes of the question as to who were his heirs for this purpose, and results in *Thomas House Ninham* taking

the share of his mother, who was one of the children of Thomas House, deceased.

So far as the purposes of this litigation are concerned, the question of what constitutes an adoption by the Oneidas, and its effect when such adoptive parents and the children become citizens of Wisconsin, as well as the question of whether *Aaron House* was legitimated by being recognized as a son in his father's will, are not involved in determining who are the heirs of Thomas House for the purposes of this case. These questions were elaborately presented and discussed by counsel and will be of grave importance whenever rights to property depend on them. We deem it advisable, however, not to consider and discuss them until they are presented in such a case.

*By the Court.*—Judgment affirmed.