## H. F. SHELDON v. HENRY DONOHOE.

EJECTMENT—*Indian Title—Void Deed.* D., a white man who had been adopted as a member of an Indian tribe, made a deed purporting to convey to S., a white man who was not a member of any Indian tribe, a tract of land which under a treaty with the United States could not be alienated, leased, or otherwise disposed of, except to the United States or to some members of the same tribe. S. paid D. a part of the purchase-price, and held possession of the land for about sixteen years, when D. again came into possession. In an action of ejectment by S. against D. to recover the land, it is *held* that the deed was absolutely void; that S. could not acquire any right in the land in violation of the treaty, nor could he indirectly build up one by adverse possession, estoppel, or any statute of limitations, and that therefore his action must fail.

*Error from Franklin District Court.*

EJECTMENT, by *Sheldon* against *Donohoe.* Judgment for defendant, at the January term, 1887. The plaintiff brings the case here. The material facts appear in the opinion.

*Jno. W. Deford,* for plaintiff in error.

*Littlefield & Schuck,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action of ejectment, brought by H. F. Sheldon against Henry Donohoe to recover 160 acres of land in Franklin county, and the judgment in the district court of which complaint is here made was in favor of the defendant. The land is a part of the Chippewa and Christian

Indian Reservation, set apart for a band of the Chippewa Indians, and also a band of the Munsee or Christian Indians. The treaty providing that these bands should be united also stipulated that a certain part of the land so reserved should be set apart and assigned in severalty to the members of the united bands; and it further provided that the lands "shall not be alienated in fee, leased, or otherwise disposed of except to the United States or to the members of said bands of Indians, under such rules and regulations as may be prescribed by the secretary of the interior." (12 U.S. Stat. at Large, 1105.) The treaty contains a provision that no white person, except such as may be in the employ of the United States, shall be allowed to reside or go upon any portion of the reservation without the written permission of the superintendent of Indian affairs, or agent or other person having the control of the reservation. Henry Donohoe was a native of Ireland, who came to America in 1849, and later married a member of the tribe of Munsee or Christian Indians, and the testimony tends to show that he was adopted by that tribe as one of its members. He is mentioned in the treaty of 1859, and an allotment of land and annuities under the treaty were received by him as a member of the tribe; assignments of allotments and conveyances of land from other members of the tribe to him were approved by the secretary of the interior, and he was otherwise recognized as a member of the tribe. In 1869, and while a member of the tribe, he made a deed purporting to convey the land in question to H. F. Sheldon, at a stated consideration of $2,025. One thousand and twenty-five dollars of the consideration was paid when the deed was made, and $500 was paid a few months later. For the remaining $500 of the consideration Sheldon executed a note, which was secured by a mortgage, in both of which it was stipulated that the money should be paid as soon as Donohoe and wife should be legally able to make, and should make and deliver to said Sheldon, a good and lawful warranty deed to the land in controversy. This note and mortgage has never been paid or satisfied. Immediately after the conveyance Sheldon took

and remained in possession of the land about sixteen years. In February, 1885, Donohoe took possession of the land and inclosed it with some of his own, and has retained possession of it ever since.

Under the testimony in the case we readily agree with the district court, that the plaintiff has failed to establish a right of recovery. The treaty contains a direct prohibition against the plaintiff acquiring a title either legal or equitable, or a right of possession to the land. It is conceded that he is a white man and has never been a member of any tribe of Indians, by adoption or otherwise. The land cannot be sold or otherwise disposed of except to the United States or to the members the united bands of Indians, for whom it was reserved. So far as we are advised, the restriction on the alienation of this land has remained unchanged since its enactment in 1859, and it renders Sheldon incapable of taking title, and the deed from Donohoe to him absolutely void. He claims under the doctrine of estoppel and by virtue of adverse possession for more than fifteen years, and relies on *Scoffins v. Grandstaff*, 12 Kas. 467, to sustain his right of recovery. In that case there was no restriction on the sale of the land to persons other than Indians, but the approval of the secretary of the interior was essential to a conveyance. Scoffins's first purchase of the land from an Indian was invalid for lack of that approval; but although he had no title he conveyed the land by deed of general warranty and it passed through several hands to Grandstaff. Subsequently the Indian made a deed to another person, which was duly approved and valid. Scoffins afterward acquired the title through this last conveyance, and brought suit to recover from Grandstaff, the grantee under the void deed, and it was held that the title subsequently acquired by Scoffins inured to the benefit of his former grantee, and that he was estopped from violating his covenants and from setting up the after-acquired title against anyone who succeeded to the title of such grantee. That case is therefore no authority for the present one. Donohoe has no other title nor any better right to convey to Sheldon than he had when the void

deed was made. Sheldon was incapable of taking the title to the land then, and has been ever since that time. By the paramount federal law he was prohibited from taking the title, and therefore he cannot indirectly build up one by adverse possession, estoppel, or any statute of limitations. (*Stevens v. Smith,* 2 Kas. 243; *Stone v. Young,* 4 id. 17; *Pennock v. Monroe,* 5 id. 578; *Clark v. Akers,* 16 id. 166; *Maynes v. Veale,* 20 id. 374; *McGannon v. Straightlege,* 32 id. 524.) It is true, that Sheldon paid Donohoe a considerable sum of money which has not been returned, and this fact would weigh greatly in favor of Sheldon under other circumstances and if he was not barred from acquiring title. It has been expressly ruled, however, that a conveyance made in violation of a treaty will not even create an equitable estate in the grantee, although he may have paid all the purchase-money, and have taken actual possession of the land. (*Clark v. Akers,* 16 Kas. 166.) In this instance Sheldon enjoyed the use and possession of an improved farm for about sixteen years for the money paid, and then, again, it is manifest that both parties understood that the sale and conveyance were contrary to law, as the note and mortgage given for the balance of the purchase-money stipulated for the making of a lawful deed at a future time, when Donohoe and wife should be legally able to do so. It is said that Donohoe was not and could not be adopted into the tribe as one of its members. He seems to have been recognized as such by both the Indians and the United States authorities; and even if he were held not to be an Indian, it could not help Sheldon, as he only claims title through Donohoe, and Donohoe acquired the land through members of the tribe; and if he was not a member of the tribe, he could not take title, and therefore could not clothe Sheldon with any. Nor is there anything in the claim that as between themselves Sheldon had the superior right of possession. The possession which Sheldon formerly held can count for nothing in this action. He not only could not purchase, but he was forbidden by law from going upon the land; and when the action was begun

*Title, not made good by adverse possession, etc.*

Donohoe was in possession, and Sheldon is now the moving party seeking to obtain possession.  In this action he must recover, if at all, on the strength of his own title, and not on the weakness of that claimed by others.  He must first establish that he has some interest in or right to the property, and, failing in this, his action against one in possession must fail. (*Railroad Company v. Rockwood*, 25 Kas. 302; *Beckman v. Richardson*, 28 id. 648.)

*Ejectment; failure of action.*

Whatever may have been the plaintiff's remedy, it is clear from the record before us that he did not establish a right to recover in this action, and therefore there must be an affirmance of the judgment given against him.

All the Justices concurring.