MELVINA A. BALDWIN v. WILLIAM W. LETSON, AND
EMMA C. BRIGGS, *Executrix, etc., and Trustee, etc.*

**No. 191.**

1. INDIAN LANDS—*under treaty of May 28, 1863, Kickapoo Indian does not become citizen until patent for, issues.* Under article 3 of the treaty of the United States with the Kickapoo Indians, proclaimed May 28, 1863, the lands allotted to a member of that tribe of Indians became alienable; and such Indian ceased to be a member of the tribe and became a citizen of the United States when his application was acted upon by the President and a patent issued for the lands, and not at the time he appeared before the United States District Court, made the required proof, and took the oath of allegiance as provided for in said article.

2. ———— *conveyance of, made by allottee before such time, void and does not work estoppel.* A conveyance of land so allotted, made by such allottee on the same day that he appeared before the United States District Court, made the required proof, and took the required oath, and before his application was acted upon by the President and a patent issued for the land, is void, and conveys no title either directly or by estoppel to the grantee therein.

Error from Atchison District Court. Hon. Robert M. Eaton, Judge. Opinion filed July 16, 1897. *Affirmed.*

This action was brought by Briggs and Letson against the plaintiff in error, Baldwin, to quiet the title to a certain tract of land in Atchison County, Kansas. Both chains of title began with Peter Cadue, a Kickapoo Indian, to whom the land was allotted under the treaty with the Kickapoo Tribe, proclaimed May 28, 1863.

In accordance with the provisions of the treaty, Peter Cadue, a male adult but not the head of a family, on the twentieth day of October, 1886, appered before the District Court of the United States

12      BALDWIN v. LETSON.

| N. Dept. | Opinion. Wells, J. | 6 Kan. App. |

for the District of Kansas, and took the oath of allegiance and made the proof required by the treaty, which is the same as that required of aliens applying for naturalization; and also, to the satisfaction of the court, made proof that he was sufficiently intelligent and prudent to control his own affairs and interests, that he had adopted the habits of civilized life, and that he had been able to support himself for at least five years.

On the same day he made this proof, he conveyed the land, by general warranty deed, to Martin and Cole, from whom the plaintiff in error traces her title. The patent to the land was issued by the President to Cadue on the nineteenth day of January, 1888, and on the twenty-fifth day of the same month he conveyed by a general warranty deed to defendant in error Letson, and to the ancestor of the other defendants. The title of the plaintiffs below was sustained in the lower court. The question in this case is, By which of these deeds did Cadue convey the title to the land?

*A. F. Martin* and *S. Heath,* for plaintiff in error.
*Jackson & Jackson,* for defendants in error.

WELLS, J. While we have considered all of the assignments of error, we do not consider it important to comment upon each. As to the contention that the title acquired by the Kickapoo Indians was a fee simple, we desire to say that we do not deem it necessary to decide this point, because, under the decision of the Supreme Court of the United States — which court is the final arbiter of this case — it is held that a restriction upon the alienation of these lands is not inconsistent with a fee-simple title. See also *Stevens v. Smith,* 2 Kan. 243.

BALDWIN v. LETSON.    13

July 16, 1887.        Opinion.   Wells; J.         E. Div.

The pivotal question in this case, however, is, Which of the two deeds of Cadue conveyed the title to the land? Article 3 of the treaty proclaimed May 28, 1863, reads as follows :

"ARTICLE 3. At any time hereafter, when the President of the United States shall have become satisfied that any adults, being males and heads of families, who may be allottees under the provision of the foregoing article, are sufficiently intelligent and prudent to control their affairs and interests, he may, at the request of such persons, cause the land severally held by them to be conveyed to them by patent in fee simple, with power of alienation ; and may, at the same time, cause to be set apart and placed to their credit severally, their proportion of the cash value of the credits of the tribe, principal and interest, then held in trust by the United States, and also, as the same may be received, their proportion of the proceeds of the sale of lands under the provisions of this treaty. And on such patents being issued, and such payments ordered to be made by the President, such competent persons shall cease to be members of said tribe, and shall become citizens of the United States ; and thereafter the lands so patented to them shall be subject to levy, taxation, and sale, in like manner with the property of other citizens : *Provided*, That before making any such application to the President, they shall appear in open court, in the District Court of the United States for the District of Kansas, and make the same proof and take the same oath of allegiance as is provided by law for the naturalization of aliens ; and shall also make proof, to the satisfaction of said court, that they are sufficiently intelligent and prudent to control their affairs and interests ; that they have adopted the habits of civilized life, and have been able to support, for at least five years, themselves and families."

It is contended by the plaintiff in error that Cadue, having appeared before the United States District Court and made the proofs required by this article

14      Baldwin v. Letson.

N. Dept.      Opinion.    Wells, J.      6 Kan. App.

of the treaty, and having taken the oath of allegiance as a citizen of the United States, and having renounced his allegiance to the Kickapoo Tribe of Indians, became a citizen of the United States, and his disability then ceased; and that he was, from that time, empowered to act in his own behalf as to any property he owned, the same as any other citizen of the United States. And that by making that proof and thus becoming a citizen of the United States under the provisions of article 3 of the treaty, he acquired a right to the patent with power of alienation, and that when that patent issued it related back to the date of this proof, being the first moment of time when he could by right claim the patent. And, being no longer incapacitated, that under his deed of October 20, 1886 — it being a warranty deed — the after-acquired legal title conveyed to him by the patent inured to the benefit of Martin and Cole and their grantees, by estoppel.

It is contended, on the other hand, that he did not become a citizen by making the proof and taking the oath of allegiance, as required of aliens, under the provisions of the treaty; that he did not cease to be under the guardianship of the United States; that he was still incapacitated to convey the land, and that until such time as the President acted upon his application and caused the patent to issue, any deed he might make would be void. If the restriction as to alienation upon Cadue as an allottee was not removed by the proceedings in the United States District Court, then his deed of October 20, 1886, was void and conveyed no title, and the plaintiff in error could not claim title under her mortgage, by way of estoppel. This is expressly decided in *Sheldon v. Donohoe* (40 Kan. 346) and a number of cases therein cited, and

BALDWIN v. LETSON. 15

July 16, 1897.        Opinion.   Wells, J.        E. Div.

also by the Supreme Court of the United States in a number of cases. A deed made in express violation of an inhibition provided by law is a void deed and conveys no title, nor can it create one by way of equitable estoppel.

Article 2 of the treaty of 1863, under which this land was allotted to Cadue, provided as follows :

"Until otherwise provided by law, such tracts shall be exempt from levy, taxation, or sale, and shall be alienable in fee, or leased, or otherwise disposed of only to the United States, or to persons then being members of the Kickapoo Tribe, and of Indian blood, with the permission of the President, and under such rules and regulations as the Secretary of the Interior shall provide, except as may be hereinafter provided. And on receipt of such certificates, the person to whom they are issued shall be deemed to have relinquished all right to any portion of the lands assigned to others in severalty, or to a portion of the tribe in common, and to the proceeds of the sale of the same whensoever made."

Article 3 of the treaty, under the provisions and amendments provided by the act of Congress of August 4, 1886 (24 U. S. Stat. at Large, 219), has a provision by which the land may become alienable by the allottees. The allottee was to apply to the President, and when he became satisfied that the allottee was sufficiently intelligent and prudent to control his own affairs and interests, the President should cause the land to be conveyed to the allottee by a patent in fee simple with power of alienation. But it was further provided that, before applying to the President, the allottee should appear before the United States District Court for the District of Kansas and make proof of the facts upon which the President was authorized to issue the patent making the lands alienable. Cadue, in this case, did everything that was required of him

16        BALDWIN v. LETSON.

N. Dept.              Opinion.   Wells, J.              6 Kan. App.

to be done.   He made the necessary proof and took the oath of allegiance.   There was nothing left to be done but for the application to go through the ordinary routine of the executive departments of the Government and receive the approval of the President, and for a patent to issue and payment to be made to him of his share of the money belonging to his tribe.

There is a further provision in this article 3, as follows : "And on such patents being issued, and such payments ordered to be made by the President, such *competent persons* shall cease to be members of said tribe, and shall become citizens of the United States ; and thereafter the lands so patented to them shall be subject to levy, taxation, and sale, in like manner with the property of other citizens." But it will be noticed that in this clause of the article all mention of the power of alienation is omitted.

If, by the proceedings in the court, Cadue became a competent person to convey his land, then the deed was not void, notwithstanding no patent was issued on his application until January 19, 1888.   Being competent to deed his own property and having made a warranty deed, the subsequently acquired legal title under the patent inured to the benefit of the grantee named in the deed of October 20, 1886, by way of relation or estoppel.   Now, it may be assumed to be true that the public authorities were not authorized to tax this land until after the patent issued, and the land could not be subject to the levy of execution or other legal process until after the patent issued ; and yet the Indian who had shown his competency, who had been adjudged competent, could nevertheless make a valid conveyance.   If he had done everything that he had to do under the law, and was entitled to a patent for this land giving him full dominion over it, with-

out any exercise of discretion by the President, the mere fact that there was a delay in issuing the patent would not affect his rights, or make his act with respect to the property to which he was entitled a void act.

A majority of this court are of the opinion that Cadue became a citizen of the United States, under the section quoted, only when the President acted upon the application and caused the patent to issue ; and while they are willling to concede that the opinion of Foster, J., in *Briggs v. Sample* (43 Fed. Rep. 102), is not conclusive upon them as authority, yet they are glad to find that the result of their own judgment, reached without the assistance of that authority, coincides with that of so distinguished and able a jurist. He says :

"It will be observed that, under the provisions of article 2 of said treaty, this land could not be sold to any person other than a member of the Kickapoo Tribe without the permission of the President of the United States.   Article 3 provides the mode by which the President shall act in giving his permission to the allottee to alienate his land.   Being satisfied of the intelligence and prudence of the Indian to control his own affairs and interests, the President may cause the land to be conveyed to him ' by patent in fee simple, with power of alienation ;  .  .  .   and such patents being issued, and such payments ordered to be made by the President, such persons shall cease to be members of said tribe, and shall become citizens of the United States, and thereafter the lands so patented to them shall be subject to levy, taxation, and sale in like manner with the property of other citizens.'   The article further provides that before making application to the President the Indian shall appear before the United States District Court, and make certain proofs establishing his intelligence, ability to support himself and family, etc., and take the oath of allegi-

18      BALDWIN v. LETSON.

N. Dept.      Opinion.    Wells, J.      6 Kan. App.

ance. This proof and oath of allegiance before the court does not of itself make the Indian a citizen, or sever his tribal relations, or procure him his patent, or make his land alienable. It is simply a preliminary proceeding to his making application to the President, and thereafter the President may act in the matter; and not until his patent is issued, and payments of his interest in the trust fund have been ordered, does he cease to be a member of the tribe, and become a citizen, and possess the power to alienate his land. It is clear that at the time this allottee made his deed to Cole and Martin, October 20, 1886, he was not a citizen, but still held his tribal relations, and was incompetent to contract, or to be contracted with, for the sale of his land; and his deed to said parties was illegal and void. Under the plain words of the treaty, it would seem no citation of cases is necessary; but, touching on this subject, see the following cases: *Pennock v. Monroe,* 5 Kan. 578; *Libby v. Clark,* 118 U. S. 250, 6 Sup. Ct. Rep. 1045; *Smith v. Stevens,* 10 Wall. 321; *Sheldon v. Donohoe,* 40 Kan. 346, 19 Pac. Rep. 901; *Maynes v. Veale,* 20 Kan. 374.''

A majority of this court cannot see that justice demands the application of the rule of relation in this case, to give the plaintiff in error a title, any more than in any other case where land has been bought from a person incapable of conveying a title, or of contracting in relation thereto. They fully accept the principle laid down in *Oliver v. Forbes* (17 Kan. 113), that it is a general rule of law that when a patent is issued it relates back to the earliest moment when it ought to have been issued, but hold that this patent ought first to have been issued when the President acted upon the application of Cadue and issued it, as the issuing of the patent under the section in controversy is itself the thing that fixes the *status* of the Indian as a citizen of the United States. The issues in the last-cited case are entirely dissimilar to those in the case at bar.

The majority also think that there is a very plain distinction between *Jenkins v. Collard* ( 145 U. S. 546) and the case at bar.    In that case the land owner was under no general disability ; as far as other property or future acquisitions were concerned, he was at full liberty to contract, and having entered into a deed with covenants of seizin and warranty while the disability existed, the court, page 560, held : '' That warranty estopped him and all persons claiming under him from asserting title to the premises against the grantee, and his heirs and assigns, or conveying it to any other parties.''    The distinction drawn is the difference between the acts of a person totally incapable of contracting, and those of a person forbidden to convey certain specific property only, after the respective disabilities are removed.

We are also referred to the case of *Supervisors v. United States* (4 Wall. 435) as being in point, but we do not see its relevancy, as the section under consideration says that '' when the President shall have become satisfied,'' etc., he may exercise the powers conferred.    His becoming satisfied, was the necessary preliminary to his final action.    And we do not think it is a fact that it was intended that he should act solely upon the determination of the United States District Court.

The· judgment of the court below will be affirmed. McElroy, J., concurring.

MAHAN, P. J. (dissenting).    I cannot agree with the majority of the court in the conclusions they arrive at in this case.    There is no contention that the conveyance by the Kickapoo Indian, Cadue, was other than a fair transaction, for a full consideration ; indeed, by the recitals in the two deeds of conveyance, the deed made,

20          BALDWIN v. LETSON.

N. Dept.          Dissenting Opinion.    Mahan, P. J.     6 Kan. App.

to Martin and Cole was for a consideration of two hundred dollars more than the later deed. The provision of the treaty is that the Indian shall apply to the President for a patent, but before making application to the President for his patent he shall appear before the United States District Court for the District of Kansas, and prove to the satisfaction of that court that he is a competent person — that he no longer requires the guardianship of the Government for his protection. Cadue had done this before he made the deed to Martin and Cole. That court, given special jurisdiction for that purpose, had adjudged him to be a competent citizen, a competent person, entitled to citizenship of the United States, and had administered the oath thereof to him.

The treaty conferred upon this Indian, and all of the Indians in like situation, as a right, an absolute and material right, the liberty of conveying his property as he saw fit. He had shown his capacity to become a citizen and had been adjudged to have the capacity to manage his own affairs. Conferring citizenship is a judicial act and not a ministerial one. The President could not confer citizenship. It will scarcely be contended that it was optional with the President to recognize the judgment of the court.

The language of the treaty is no stronger than the language of the homestead law — that land acquired under it shall be inalienable until the patent issues; and the only question in this case is as to the competency of the Indian to make the deed. If he was competent, if he had a right to the title, if he had been adjudged to have the right, he was capable of making such a contract as would raise an estoppel against him. The treaty itself, and the action of the departments of the Government, treat him as a com-

BALDWIN v. LETSON. 21

July 16, 1897. Dissenting Opinion. Mahan, P. J. E. Div.

petent citizen after the judicial determination. I say he had a right to have that patent, upon showing to the court his competency. It was not intended by Congress or by the Indians entering into this treaty, that the President should have power to annul the action of the court. The Indian had done everything that was necessary for him to do to establish that right. The decree of the court was the only evidence contemplated by the act of Congress or by the treaty, upon which the President should act. Being competent to make the deed, having acquired by his act a right to the patent, the title thereunder passed to his grantees, Martin and Cole, by way of relation and estoppel.

I am not unmindful of the fact that Judge Foster of the United States District Court, sitting upon the Circuit bench, decided to the contrary ; but while I have high regard for his ability, I do not think he gave to the case that careful consideration which is usual with him. The authorities cited at the conclusion of his opinion, and copied in the opinion of the majority of this court, when examined, are to the effect that an Indian, while under the inhibition of the Act of Congress or the treaty to alienate his land, cannot make a valid deed ; that any deed made by him is absolutely void and cannot be the foundation of an estoppel.

Mr. Justice Field, in the case of *Gibson v. Chouteau* (13 Wall. 101), referring to this doctrine of relation and estoppel, in connection with the ruling of the Supreme Court of the State of Missouri in that case, says : '' The error of the learned court consisted in overlooking the fact that the doctrine of relation is a fiction of law adopted by the courts solely for the purposes of justice, and is only applied for the security and pro-

22          BALDWIN v. LETSON.

N. Dept.          Dissenting Opinion.   Mahan, P. J.      6 Kan. App.

tection of persons who stand in some privity with the party that initiated proceedings for the land, and acquired the equitable claim or right to the title."

In the case at bar, Martin and Cole purchased this land and, under the evidence contained in the record, paid a full value therefor. Their deed was recorded. Cadue had initiated proceedings for the land — had acquired the equitable claim and a right to the title. They were in privity with him by reason of the deed, and justice demands the application of this rule of relation in this case, if in any case it were possible. This is not a controversy between the Indian allottee and his grantee before restriction of alienation had been removed. Nor can this allottee be in any manner benefited by holding that his first deed was invalid. A decision to that effect can only result in benefit to the subsequent purchasers, with notice of the rights of Martin and Cole, and to their grantees, and to the detriment of the plaintiff in error in this case, whose mortgage was recorded at the time they took the deed from Cadue.

The Supreme Court of this State, in *Oliver v. Forbes* (17 Kan. 130), says : "And it is a general rule of law, that when a patent is issued it relates back to the earliest moment when it ought to have been issued." Now the earliest moment when this patent ought to have been issued was when the allottee complied with the provisions of the treaty and the Act of Congress of August 4, 1886 (24 U. S. Stat. at Large, 219), prior to the making of the deed to Martin and Cole. The case of *Oliver v. Forbes* arose under the provisions of the treaty between the Government and the Pottawatomie Indians, which is almost if not *verbatim* the same as the treaty under consideration.

Counsel for defendants in error refer to the case of

*Jenkins v. Collard* (145 U. S. 546). This case grew out
of a case of confiscation under the act of Congress of
July 17, 1862 (12 U. S. Stat. at Large, 589). It was
held that a person whose estate was confiscated under
this act was without power of alienation of any inter-
est in the land confiscated. The inhibition against
alienation was just as binding in his case as in that of
a Kickapoo or any other Indian. The person was an
incompetent person by reason of having taken part in
the rebellion against the Government. The inhibi-
tion was for a different reason, only. The court held,
however, that a deed made while Jenkins was labor-
ing under this disability imposed by the Act of Con-
gress, could, by covenants of seizin and title, estop
him and his heirs from claiming or asserting any title
to the confiscated estate.

Upon the question of the right of the Kickapoo In-
dian, Cadue, to this patent upon making this proof
and taking the oath of allegiance, see *Supervisors v.
United States* (4 Wall. 435). Under the rule laid down
in this case, the President was by law absolutely re-
quired to issue this patent when Cadue appeared be-
fore the Judge of the United States District Court for
the District of Kansas and made the proof provided
for in article 3 of the treaty. It is evident, from this
provision of the article, that it was intended that he
should act, and act solely, upon the determination of
the United States District Court. *Newkirk v. Marshall*,
35 Kan. 77.

It follows that the court erred in rejecting the deed
of Cadue to Martin and Cole and the subsequent con-
veyances down to the mortgagor of the plaintiff in
error, and erred in holding that the deed made by
Cadue on October 20, 1886, passed no title and was a
void deed.