ALFREY et al. v. COLBERT.

COLBERT v. ALFREY et al.

(Circuit Court of Appeals, Eighth Circuit. February 12, 1909.)

Nos. 2,729, 2,837.

1. INDIANS (§ 15*)—DEEDS—VALIDITY—MENTAL INCAPACITY OF GRANTOR, COUPLED WITH INADEQUACY OF CONSIDERATION.

Evidence *held* to sustain a decree canceling two deeds made by an Indian allottee on the ground that when the first was made he was a minor and was also at the time, and when the second confirmatory deed was executed, illiterate and of weak mind and incapable of caring for his interests, and that the consideration paid was not over one-fourth of the actual value of the property.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 15.*]

2. INDIANS (§ 15*)—LANDS—ALIENATION BY ALLOTTEES—"PARAGRAPH."

Act June 30, 1902, c. 1323, 32 Stat. 500, ratifying a supplemental agreement with the Creek Indians, etc., by section 16 provides that lands shall not be alienated by allottees before the expiration of five years, except with the approval of the Secretary of the Interior. At the close of the section is the following provision: "Any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity." By Act April 21, 1904, c. 1402, 33 Stat. 189, 204, all restrictions upon aliena-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion of lands, except homesteads, were removed as to members of the Five Civilized Tribes "who were of full age and not of Indian blood." The above provisions of the earlier act are in separate paragraphs, grammatically considered. *Held* that, in view of the evident intent of Congress, the word "paragraph," as used in the second provision, must be construed to include the entire section, and that a conveyance made by an allottee, although not of Indian blood, while a minor and without the approval of the Secretary, was void, and could not be ratified after he reached majority.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 15.*

For other definitions, see Words and Phrases, vol. 6, p. 5164.]

3. STATUTES (§ 199*)—CONSTRUCTION—"PARAGRAPH."
. The term "paragraph," in an act of Congress, will be construed to mean "section," whenever to do so accords with the legislative intent.

[Ed. Note.—For other cases, see Statutes, Dec. Dig. § 199.*]

4. INFANTS (§ 31*)—CONVEYANCES—AVOIDANCE—RETURN OF CONSIDERATION.
If a conveyance made by a minor be disaffirmed, he will be required to restore such of the consideration as remains in his hands; but repayment of the consideration will not be required where it has been wasted, disposed of, or consumed during minority, and his estate has not benefited thereby.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 46, 50–63; Dec. Dig. § 31.*]

Appeal from the United States Court of Appeals in the Indian Territory.

Appeal from the Supreme Court of Oklahoma, as Successor of the United States Court of Appeals in the Indian Territory.

Robert F. Blair, for plaintiff.

Charles G. Watts, for defendants.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

HOOK, Circuit Judge. Perry Colbert, by his next friend, James Colbert, sued R. J. Alfrey and G. D. Carl for the cancellation of a deed conveying 120 acres of land in the Indian Territory which had been allotted to him as a citizen of the Creek Nation in the distribution of the tribal property by the Dawes Commission. He is a freedman without Indian blood, and the land in controversy did not embrace his homestead. The grounds for cancellation were that complainant was a minor when the deed was executed, was without contractual mental capacity, and was induced by defendants to part with his land for a grossly inadequate consideration. The cause was referred to a master, who, upon hearing the evidence, reported as his conclusions that complainant was not of age when the deed was made, that he was "very ignorant and inexperienced in all business matters," and that the price paid for the land was grossly inadequate. He recommended a decree declaring the deed null and void and requiring a reconveyance of the property. After the report was made up, but before it was presented to the court, defendants filed a supplemental answer, setting forth a second deed, executed by complainant after the evidence had been heard by the master, and reciting as considera-

tion the payment of the money for the first deed and the additional sum of $5. It is conceded complainant was of age when the second deed was executed. The issues upon the validity and effect of this deed were referred to another master, who, after taking additional testimony, reported against the defendants and recommended a decree for the cancellation of both deeds and a reconveyance of the property. The reports of the masters were confirmed by the trial court, and that court also made findings that complainant was a minor when the first deed was executed and the·consideration therefor was wholly inadequate; also that when both deeds were executed complainant, though not insane, was inexperienced, of limited education and training, and of a weak and feeble mind, and that his property should be placed in the hands of a curator. It was accordingly decreed that the complainant within a time fixed refund to defendants the moneys paid him, with interest, and that the deeds be canceled. The defendants appealed. The complainant also appealed from that part of the decree requiring a refunding of the moneys. The United States Court of Appeals in the Indian Territory affirmed the decree, and the case was brought here.

While there is some doubt as to complainant's age when he made the first deed, we think there was sufficient evidence to support the findings of the masters and the trial court upon that issue. The findings were approved by the appellate court in the territory, and under familiar principles applying to the circumstances stated they should not be disturbed here. There is no doubt that, aside from his minority, complainant was incapable of caring for and safeguarding his property interests, or that the consideration paid him was grossly inadequate. The evidence was clear that he was a weak-minded, illiterate negro boy, without ability to protect himself from being over-reached and defrauded. He was regarded as lacking in mental capacity from childhood. When quite young a bell was put on him, as on a domestic animal, to give information of his whereabouts, and thenceforth, and until he attained his majority and afterwards, he was generally looked upon as being unreliable and irresponsible. His conception of amounts and values is indicated by his offer on the day the first deed was made to sell the 120 acres of land to another party for "$15 per acre, or $750," and by his subsequent lease of the 40 acres of land set apart as his homestead for the gross sum of $10 for a term of five years, or 5 cents per acre per annum. For the first deed defendants paid him $550, or a little more than $4.50 per acre for the tract of 120 acres. They shortly afterwards asked $20 or $25 per acre for it, and within two months of their purchase they contracted to sell it for $2,700; but the bringing of the suit defeated the sale. They sought to show that when they bought the land the doubt whether the owner had a right to sell made the price paid a fair one; but that is not the test in a case like this. It is quite clear the land itself was worth four or five times as much as was paid for it.

There is another consideration which affects the validity of the first deed and the attempted ratification by the second. Act June 30, 1902, c. 1323, 32 Stat. 500, entitled "An act to ratify and confirm a supple-

mental agreement with the Creek Tribe of Indians and for other pur-
poses," provides:

"Lands allotted to citizens shall not * * * be alienated by the allottee or
his heirs before the expiration of five years from the date of the approval of
this supplemental agreement, except with the approval of the Secretary of the
Interior."

The time had not expired when the deeds were made, nor did the
Secretary approve either of them. The provision quoted appears in
what may for the moment be called the sixteenth section of the act.
Various other provisions are made therein regarding the disposition
of homesteads, etc. At the conclusion of the section is the following:

"Any agreement or conveyance of any kind or character violative of any of
the provisions of this paragraph shall be absolutely void and not susceptible of
ratification in any manner, and no rule of estoppel shall ever prevent the as-
sertion of its invalidity."

The later Act April 21, 1904, c. 1402, 33 Stat. 189, 204, removed
all restrictions upon the alienation of lands of allottees of either of the
Five Civilized Tribes of Indians (among whom are the Creeks) who
were of full age and not of Indian blood, with an exception as to
homesteads. On April 25, 1904, four days after the approval of this
act, the purchase from complainant was made and the first deed ex-
ecuted; but he was then a minor, and the restriction against his aliena-
tion still remained. When the second deed was made complainant
was of age, and defendants, assuming he was otherwise capable of
contracting, rely upon it as a ratification of the first. Whether the
first deed was susceptible of ratification depends upon the construction
of section 16 of the act of June 30, 1902, and particularly upon the
meaning of the term "paragraph" in the final clause. As it now ap-
pears in the statute book, there are two paragraphs of section 16,
though not designated as such, nor distinguished from each other by
letter or numeral, and the five-year restriction against alienation ap-
plicable to complainant appears in the first. Defendants contend that
the final clause forbidding ratification, in which the term "paragraph"
appears, relates exclusively to the matters contained in the latter part
of the section as printed, while the position of complainant is that by
"paragraph" is meant the entire sixteenth section or subdivision of the
act.

We are of opinion that it was the intention of Congress that no
conveyance forbidden by any of the terms of the sixteenth section of
the act should be susceptible of ratification or be made good by estop-
pel. The section in its completeness has a common subject-matter, the
disposition of allotments, and the provisions regarding it would nat-
urally be grouped or placed in a single subdivision or paragraph of
an agreement or in a single section of a law. The express restrictions
upon alienation as to both homesteads and surplus lands appear in the
first paragraph, not in the second, and it was to them the final clause
was obviously directed. The act of June 30, 1902, differs from acts of
Congress in general, in that the subdivisions thereof are not designated
as sections. The body of the act was a prior agreement between the
Dawes Commission and representatives of the Creek Tribe of Indians,

and, with some changes, it was confirmed by Congress and submitted to the tribal council for ratification. The subdivisions or paragraphs of the prior agreement were consecutively numbered, and that arrangement was preserved when it was incorporated in the act. A similar arrangement and omission to designate numbered subdivisions or paragraphs as sections will be found in the agreement with the Choctaws and Chickasaws embodied in Act July 1, 1902, c. 1362, 32 Stat. 641. We think it quite clear that "paragraph" was used synonymously with "subdivision" or "section," and that it does not mean the minor undesignated part of the text, the arrangement of which may well be the mere result of taste, without intention to control the sense or import. The term "paragraph," in an act of Congress, will be construed to mean "section," whenever to do so accords with the legislative intent. Marine, Collector, v. Packham, 3 C. C. A. 210, 212, 52 Fed. 579.

As to the part of the decree requiring complainant to refund the consideration paid for the deeds: There was no showing that when the suit was brought, or when complainant became of age, he still had any of the money paid him, or any property that had been acquired with it, or that any part of it had been devoted to the improvement of his land. Such proof as there was tended to show the money was quickly squandered after he got it, and the effect of the decree in its present form would be to diminish the estate he possessed during minority. To hold a minor to the restoration of what he received, but has dissipated, is to go counter to the very reasons upon which his incapacity to contract is founded. The Court of Appeals in the Territory sustained the decree in this particular because it appeared complainant orally represented he was of age when he made the sale; but such representation does not differ in its effect from that which is implied from the act of conveyance. "A conveyance by an infant is an assertion of his right to convey. A contemporaneous declaration of his right or of his age adds nothing to what is implied in his deed. An assertion of an estoppel against him is but a claim that he has assented or contracted. But he can no more do that effectively than he can make the contract alleged to be confirmed." Sims v. Everhardt, 102 U. S. 300, 313, 26 L. Ed. 87. If a contract made by a minor be disaffirmed, he will be required to restore such of the consideration as remains in his hands; but repayment of the consideration will not be required, where it has been wasted, disposed of, or consumed during minority. MacGreal v. Taylor, 167 U. S. 688, 698, 17 Sup. Ct. 961, 42 L. Ed. 326. It follows, therefore, the court erred in this particular, and in dividing the costs between the parties.

The decree is modified by excluding therefrom the provision that complainant repay the moneys he received, with interest, and also by awarding him recovery of costs. As so modified, the decree is affirmed.