## STEVENS v. ELLIOTT *et al.*

No. 1143.   Opinion Filed September 26, 1911.

(118 Pac. 407.)

1.   EVIDENCE—Testimony Based on Hearsay.   In the trial of an action, it is competent testimony for a witness to testify as to his or her own age.

2.   INDIANS — Lands — Conveyance — Validity.   A conveyance executed by a minor Creek freedman on March 9, 1905, where she attempted to convey a portion of her allotment received by her on account of her citizenship in the Creek, or Muskogee, Tribe of Indians, is absolutely void, by reason of the provisions of section 16 of the act of June 30, 1902 (chapter 1323, 32 Stat. 503).

3.   SAME—Cancellation of Deed—Pleading.   In a suit in equity by a minor Creek freedman to cancel and annul a deed executed by her during minority, it is unnecessary to formally allege an offer to do equity by returning the consideration received by her during minority.

4.   SAME—Estoppel.   On March 9, 1905, V. sought to purchase from E., a minor Creek freedman, a portion of her allotted lands. At the time it was made known to V. that E., though a married woman, was under the age of 18 years.   Thereupon certain affidavits, stating that E. was 18 years of age, were presented to E. and the members of her family and others present, and which affidavits V. attempted to procure E., her mother, husband, and another to sign, but which they refused to do, and thereupon said affidavits were changed so as to read that E. was "of lawful age," instead of 18 years of age, and which affidavits were then signed and sworn to upon representations made by V. that E., being a married woman, was thereby, in law, of lawful age. Held not to constitute such fraudulent or inequitable conduct on the part of the infant as will estop her from bringing a subsequent suit to cancel a deed thereafter executed by her to V. during her minority.

5.   SAME—Cancellation—Pleading.   In a suit in equity to cancel a void deed, made by a minor Creek freedman during minority, the court has full power to impose as a condition to the cancellation of such deed, the return of the consideration received, or such part thereof as the minor may have in his or her possession upon attaining majority; and an offer to do equity or return such consideration is an unnecessary pleading.

6.   APPEAL AND ERROR—Disposition of Cause—Reversal—Remand of Cause.   Where it is neither alleged in the pleadings nor shown by the testimony that an infant in an equitable proceeding to

cancel a conveyance made during a minority was or was not in possession of the consideration received on account of such sale, it is proper for the court, in remanding the case on appeal, to order the issues made up that all the equities of the respective parties properly before the court on appeal may be determined, and, in so far as it is possible when the conveyance had been declared void, to see that the parties are placed in statu quo.

7.    INDIANS—Lands—Conveyance—Cancellation—Evidence.   Testimony examined, and held sufficient to show that at the date of the execution of the deed of E. to V., to wit, March 9, 1905, the vendor, E., was not 18 years of age.
(Syllabus by Sharp, C.)

*Appeal from District Court, Wagoner County; John H. King, Judge.*

Suit in equity by Hattie Elliott, a Creek freedman, to recover certain lands conveyed while a minor to Perry R. Vaughn and by him to Williston J. Stevens. Robert F. Blair, a purchaser from plaintiff, after her majority, of a portion of the same tract, intervened. Decree for plaintiff. Reversed and remanded, with instructions.

On the 2d day of May, 1905, defendant in error, Hattie Elliott, a Creek freedman, commenced in the United States Court for the Indian Territory, at Wagoner, a suit against defendants, Williston J. Stevens and Perry R. Vaughn, seeking the cancellation of a deed by her made on the 9th day of March, 1905, whereby she attempted to convey to the said Perry R. Vaughn the S. ½ of the S. E. ¼ of section 22, township 19 N., range 18 E., the same being the lands allotted to her as a citizen of the Creek Nation, alleging in her petition that at the time said deed of conveyance was executed she was a minor under the age of 18 years, and that the deed by her executed was in violation of law, and therefore void. Thereafter, and on the 22d day of April, 1908, an amended petition was filed, and on the same day, Robert F. Blair, by permission of the court, became a party to said suit, having alleged that on the 4th day of April, 1908, plaintiff ha dexecuted and delivered to him a deed to the S. E. ¼ of the S. E. ¼ of section 22, township and range aforesaid.

On the 8th day of April, 1909, defendant, Williston J. Stevens, answered, denying generally the allegations contained in the amended petition, though admitting that plaintiff was "a citizen of the Creek Nation, enrolled on the freedman roll thereof," and that on the 3d day of April, 1903, there was allotted to her the S. E. ¼ of section 22, township and range aforesaid, and that plaintiff was at all times thereafter in the possession of said lands. Defendant Stevens admitted that on the 9th day of March, 1905, Perry R. Vaughn obtained from the said Hattie Elliott a deed to the S. ½ of the above-mentioned 160-acre tract, but denied that at the sale thereof said plaintiff was a minor. Defendant further admitted that on the 9th day of March, 1905, said Perry R. Vaughn executed to him a deed to said eighty-acre tract, and alleged that the said plaintiff on the date of the execution of her deed, accompanied by the said Perry R. Vaughn, her mother, stepfather, and husband, came to the office of said defendant in Muskogee, and offered to sell the eighty-acre tract of land in controversy to the said Vaughn, and that at the time the said Hattie Elliott, her mother, and stepfather represented to said defendant that she was of legal age; that then and there the said Hattie Elliott, her mother, stepfather, and husband, made affidavit that she was of lawful age, and alleged that she so appeared to the defendant; that said defendants relied upon the representations made as to the age of plaintiff, and entered into an agreement to purchase the lands in controversy, whereby the plaintiff was to execute a warranty deed to said lands to Perry R. Vaughn, and that the said Perry R. Vaughn then and there agreed to convey the lands so purchased to his codefendant, Stevens, for a valuable consideration; that thereupon the said plaintiff executed a warranty deed to the lands in controversy to the said Perry R. Vaughn, who immediately thereafter, in turn, executed a conveyance of said lands to defendant, Stevens; that said Perry R. Vaughn received therefor from the said Stevens the sum of $1,000, and plaintiff, as a consideration for her conveyance to Perry R. Vaughn, the sum of $800. Defendant Stevens further alleged that, even though at the time of the execution of said con-

veyance to Vaughn the said Hattie Elliott was a minor, by reason of her representations as to her age, she is estopped from setting up nonage, without first offering to return to these defendants all sums of money received by her which she at the time of the sale received from them, with interest. Stevens asked the court to decree that plaintiff was of lawful age at the date of the execution by her of the deed to Vaughn, and that said Stevens had a legal title to the lands conveyed, and that the decree theretofore rendered in favor of plaintiff be vacated and set aside; that the conveyance by Hattie Elliott to Robert F. Blair be canceled, and the title to said Stevens quieted; but that, if the court should find that plaintiff was a minor at the date of the execution of the said deed, then her suit should be dismissed, the equities being with said defendant Stevens, and that he have and recover all costs.

On the 4th day of May, 1909, a reply, containing a general denial, was filed by plaintiff. The case was thereafter tried before the court, a jury having been waived. Defendant Perry R. Vaughn was duly served with process, but made no appearance, and on the 8th day of May, 1909, the court entered a decree in favor of plaintiff, Hattie Elliott, and against defendants Perry R. Vaughn and Williston J. Stevens, in which decree the court found that the deed executed by plaintiff on March 9, 1905, was made by her while she was a minor, under the age of 18 years, hence, absolutely void, as was the deed of the same date made by the said Perry R. Vaughn to Stevens, and that both deeds should be canceled, set aside, and held for naught. The court further found that after plaintiff had arrived at full age, and for a valuable consideration, she had executed to Robert F. Blair a deed to the S. E. 1/4 of the S. E. 1/4 of section 22. The decree so rendered, canceled, annulled, and set aside the deed from plaintiff to Vaughn in and to the said eighty-acre tract, and quieted the title thereto in the said Hattie Elliott and Robert F. Blair, according to their respective interests.

*Chas. F. Runyan,* for plaintiff in error.

*Robt. F. Blair,* for defendants in error.

Opinion by SHARP, C.   (after stating the facts as above).
After a careful examination of the entire record, we are of the
opinion that the trial court committed no error in finding that
Hattie Elliott was on March 9, 1905, under the age of 18 years,
and that the testimony amply sustains the finding.  The testimony
fully establishes that Hattie Elliott was between 15 and 16 years
of age when her deed of conveyance was made.

Plaintiff in error contends that the testimony of plaintiff
as to her age, because she did not know the facts of her own per-
sonal knowledge, was of no value.   This is not the law.   16
Cyc. 1124; *Hill v. Eldridge,* 126 Mass. 234; Tyler on Infancy,
p. 205.   We deem the testimony offered by plaintiff as to her
age of much higher and more convincing character than that
offered by defendant Stevens.

The question then arises:   Did the plaintiff and those who
accompanied her to Muskogee fraudulently represent her age,
either to Perry R. Vaughn or to the witness W. A. Stetler?   We
think not.   Perry R. Vaughn was a negro, claiming to be a law-
yer, and the testimony shows that he attempted to obtain from
Dora Smith, the mother, A. Oliver, the negro preacher, and Tom
Elliott, the husband of Hattie Elliott, as well as from plaintiff
herself, affidavits that she, the said Hattie Elliott, was 18 years
of age.   These affidavits, previously prepared, each of the parties
named refused to sign.   After some discussion as to the legal ef-
fect of plaintiff's marriage, the affidavits were changed, so that,
instead of reading, "eighteen years of age," the same were made
to read, "of lawful age."   The affidavits were then signed and
sworn to.   From the testimony as a whole, it appears that Vaughn
was apprised of the fact that, though married, Hattie Elliott was
under 18 years of age.   Vaughn represented that plaintiff, be-
ing a married woman, was of lawful age, and it was this
representation made by Vaughn himself that led to the making
of the affidavits in question.   The alteration of the affidavits,

as indicated, the result of the refusal of the parties to sign them in their then existing form, brought home to the knowledge of those present full information of plaintiff's legal ability.

This occurred before the decision of this court in *Jefferson v. Winkler,* 26 Okla. 653, 110 Pac. 755, which opinion was filed July 12, 1910, and prior to which time the legal effect of a conveyance made by a married minor allottee was a mooted question. Section 16 of the act to ratify and confirm the Supplemental Treaty with the Creek Indians, approved June 30, 1902 (chapter 1323, 32 Stat. 500), provides:

"Lands allotted to citizens shall not in any manner whatever at any time be encumbered, taken or sold to secure or satisfy any debt or obligation, nor alienated by the allottee or his heirs, before the expiration of five years from the date of the approval of this supplemental agreement. Any agreement or conveyance of any kind or character, in violation of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

It was said by the court in *Bragdon v. McShea,* 26 Okla. 35, 107 Pac. 916:

"The treaty provisions were, as to a minor Creek freedman, in force at the time of the execution of the deed by Myrtle McIntosh to appellant, and said deed was, therefore, absolutely null and void, and incapable of ratification"

—citing *Blakemore v. Johnson,* 24 Okla. 544, 103 Pac. 554; *Colbert v. Alfrey et al.,* 168 Fed. 231, 93 C. C. A. 517.

In this case the court, in adopting the language of Mr. Bigelow, declares that the essential elements of an equitable estoppel are: (1) That there must exist a false representation or concealment of material facts. (2) It must have been made with knowledge, actual or constructive, of the facts. (3) The party to whom it was made must have been without knowledge or the means of knowledge of the real facts. (4) It must have been made with the intention that it should be acted upon. (5) The party to whom it was made must have relied on, or acted upon it, to his prejudice.

As we have already said, we do not believe there were any false representations or the concealment of material facts made in regard to the age of the grantor, neither do we believe that either Vaughn or Stetler was without knowledge or the means of knowledge of the real facts concerning the age of said grantor; but, on the other hand, that Vaughn, and perhaps Stetler, was apprised of the true facts. As measured by the foregoing requirements, we are unable to say that the facts warrant the application of the doctrine of equitable estoppel or estoppel *in pais*.

Counsel for plaintiff in error cites and relies upon the opinion of this court in the case of *International Land Co. v. Marshall*, 22 Okla. 693, 98 Pac. 951, 19 L. R. A. 1056. In the syllabus of this opinion it is said:

"Where a party fraudulently represents that he is over 21 years of age, when, in fact, he is only 19 years of age, and such false and fraudulent representations, in connection with his appearance and size, being believed, by means of a deed then and there executed and delivered by him, he on account of such fraudulent representations obtains the sum of $125 as a part of the consideration therefor, such party grantor, whilst in possession of the land described in such deed, will not be permitted to invoke the aid of equity to have such deed canceled, although void, without offering to refund the amount of money so fraudulently obtained."

Having found that no misrepresentations were made and no fraud practiced in this case, we are unwilling to concede that the above case has any application. The duty devolving upon infants when rescinding contracts made by them during their minority is well established, though the authorities are not altogether in harmony, but these decisions are based upon the general doctrine that such contracts are voidable and not void, and therefore are not controlling. Ordinarily the contracts of a minor are binding, unless timely rescission by some affirmative act be made. The law fixes the terms upon which the minor may obtain relief. It is upon the act of rescission in compliance with the law governing the time, tender, etc., that the right of action becomes complete, and the contract is then, and not until then, void. But here is a positive statute making any agreement or conveyance not

voidable, but void. The statute here accomplished, *proprio vigore,* what ordinarily requires a definite course of action on the part of the infant. It would be difficult to find language more positive, explicit, and exacting in its terms and meaning than is found in the provisions of this section of the Supplemental Treaty with the Creek Indians, *supra*:

· "Any agreement or conveyance of any kind or character in violation of any of the provisions of this paragraph, shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

The question of restricting the alienation of land allotted to Indians, and the effect of the restrictive language employed, has frequently been before the courts, state and federal. In *Clark v. Akers,* 16 Kan. 166, it is said:

"A deed made by an Ottawa Indian for land allotted and patented to him under the treaty of 1862 [June 24, 1862, art. 7, 12 Stat. 1237], conveying the said land to another Ottawa Indian, at any time prior to July 4, 1867, without the consent of the Secretary of the Interior, was absolutely void, and could not create even an equitable estoppel in the lands in favor of the grantee, even though he had paid the purchase price."

The Ottawa Treaty of 1862 provided, among other things, that Indian allottees should not alienate or incumber the lands allotted to them in any manner until they had by the terms of the treaty become citizens of the United States; and that any conveyance or incumbrance of said lands done or suffered and made before they should become citizens should be null and void. In *Baldwin v. Letson et al.,* 6 Kan. App. 11, 49 Pac. 619, was involved the construction of the treaty of 1863 (Act June 28, 1862, 13 Stat. 623) between the United States and the Kickapoo Indians, and the subsequent acts of Congress with reference thereto. The court said:

"If the restrictions upon the alienation of Cadue as an allottee were not removed by the proceedings in the district court, then his deed of October 20, 1896, was void, conveying no title, nor could the plaintiff in error claim title to her mortgage by way of estoppel. This is expressly decided in *Sheldon v. Donohoe,* 40 Kan. 349, 19 Pac. 901, and in a number of cases cited, as well as by the Supreme Court of the United States in a number of

cases. A deed made in express violation of an inhibition provided by law is a void deed and conveys no title, nor can it create one by way of equitable estoppel."

In *Smith v. Stevens,* 77 U. S. 321, 19 L. Ed. 933, the Supreme Court of the United States in affirming a decision of the Supreme Court of Kansas said:

"This act vested the title of the United States to the lands which the treaty had set apart for the use of the half-breeds in the reserves, if living, or, if dead, in their heirs, and declared void all prior contracts for their sale, and forbade any future disposition of them, except by the Secretary of the Interior on the request of the party interested. There is no ambiguity in the act, or is it requisite to extend the words of the act beyond their plain meaning in order to arrive at the intention of the Legislature. It was considered by Congress to be necessary in case the reserves should be desirous of relinquishing the occupation of their lands that some method of disposing of them should be adopted which would be a safeguard against their own improvidence; and the power of Congress to impose a restriction on the right of alienation in order to accomplish this object cannot be questioned. Without this power, it is easy to see, there would be no way of preventing the Indians from being wronged in contracts for the sale of their lands, and the history of our country affords abundant proof that it is at all times difficult, by the most careful legislation, to protect their interests against the superior capacity and adroitness of their more civilized neighbors. It is manifestly the purpose of Congress, in conferring the authority to sell on the Secretary of the Interior, to save the lands of the reserves from the cupidity of the white race; and, if the provisions of the treaty were not enough for the purpose, the speedy action of Congress was demanded by the rapid settlement of the adjacent country. * * * It needs no argument or authority to show that the statute, having provided the way in which these half-breed lands could be sold, by necessary implication, prohibited their sale in any other way. The sale in question not only contravened the policy and spirit of the statute, but violated its positive provisions. It appearing, then, that by the treaty and law in force at the date of the deed Victoria Smith had no capacity to alienate her land and the authority to sell being vested in the Secretary of the Interior, and there being no evidence that this officer ever authorized the sale, or in any manner consented to it, it follows that the same was void, and that the deed conveys no title to the purchaser."

While the character of title possessed by the Kansas Indians to their allotments may, and probably did, differ from that of the Creek citizens or freedmen in Oklahoma, this does not militate against the rule above mentioned, as the question is one of the right to alienate, and not one of title. Hattie Elliott sold the land in question to Perry R. Vaughn, who, in turn, sold to plaintiff in error. Vaughn was made a party to the suit below, but failed to appear, though served with summons, and judgment was rendered against him on May 4, 1909, and the deed executed by her to the said Vaughn on May 9, 1905, canceled. Vaughn has made no appearance in this court, though made a defendant in error in the appeal prosecuted by Stevens.

Plaintiff in error, in his separate answer to the amended petition, says:

"And this defendant avers that whether or not the said Hattie Elliott was at the time of the execution of the conveyance aforesaid of lawful age and capable of executing a valid conveyance to said lands that she by virtue of her representations as to her age is estopped from setting up nonage at this time, without first offering to return to these defendants the sum of money which she received at that time from them, together with legal rate of interest thereon."

Hattie Elliott received no consideration from Stevens. What consideration she, in fact, received, was paid her by Vaughn, and it is immaterial whether or not Vaughn used any of the proceeds of the check given him by Stetler, acting as agent for Stevens, in making payment to her, the morning following, at Wagoner. The question arises what is meant by "returning the consideration to these defendants." Does it refer to each of them, to them jointly, and, if so, in what proportions? We cannot say from the pleadings. It may be affirmed, as a rule, that courts will show infants special favor in all litigation in their behalf, and will not allow any advantage to be taken of them. Tyler on Infants, pp. 204, 205, 209. To this rule we subscribe on the state of the record in this case.

This suit was brought by plaintiff while a minor, through her next friend, Thomas Elliott. Counsel below have rested their

case upon two propositions, the first of which we have already considered; the second being that plaintiff below had failed to make out a case in her petition, and did not offer to do equity by returning the purchase price as a condition precedent to the cancellation of said instruments.

No demurrer was filed to the amended petition, neither was there filed a motion for judgment on the pleadings, nor objection to the introduction of testimony. Counsel elected to try the case on the issue as joined by the amended petition, separate amended answer, and the reply. On this state of the record, and no proof being offered by either party concerning the possession of the consideration paid to Hattie Elliott, in view of the conclusion already reached that she was on March 9, 1905, a minor, and that neither she nor any one acting for her or in concert with her were guilty of fraudulent representations, what relief should be granted the parties? From the conclusions reached the deeds of March 9, 1905, should be canceled and set aside. But should this be done without imposing terms upon the plaintiff? We think not, providing that it should hereafter appear that she on the date when she arrived at her majority had in her possession or under her control the money, or any part thereof, received by her from Vaughn, or any property received in exchange therefor. Such money or property as she had on said date she should account for. If, however, she had spent or disposed of the money so received, or its proceeds, then the relief accorded by the court should not be denied her. This is the settled rule of the courts in almost all jurisdictions. 22 Cyc. 615, and cases cited; *Colbert v. Alfrey,* 168 Fed. 231, 93 C. C. A. 517; *Blakemore v. Johnson,* 24 Okla. 544, 103 Pac. 554.

In a suit brought by a minor in a court of equity to cancel a void deed executed by her during her minority and under circumstances such as disclosed by the testimony in this case, great liberality in matters of pleading and procedure should be indulged that the equities of the parties may be adjusted and their rights not circumscribed by technical or strained rules of pleading. In saying this we do not mean to be understood as laying

down the proposition that different rules of either pleading or procedure should govern in litigation in which minors may be affected, but confine ourselves to the proposition stated. This we understand to be the tendency of the courts in the more recent cases.

In *Thomas et al. v. Beals,* 154 Mass. 51, 27 N. E. 1004, the Supreme Court of Massachusetts, speaking through Holmes, J., now a member of the United States Supreme Court, said:

"There is no necessity for an offer to return the consideration before the appeal was brought. An appeal in equity is not like an action at law, brought on the footing of a rescission previously completed; for instance, to replevy a horse obtained by fraudulent exchange, and to which the plaintiff has no right, unless he has restored what he has received. *Thayer v. Turner,* 8 Metc. (Mass.) 550. The foundation of the bill is that the rescission is not complete, and it asks the aid of this court to make it so. It is objected that at least the bill ought to offer restitution. We are aware that in many cases an offer to do equity has been held necessary, but in the case at bar, the court has power to impose equitable conditions upon the relief granted the plaintiff. And it is hardly, if at all, conceivable that this decree in any event could be for the relief of the defendant alone against the plaintiff, as in the case of an account, where nevertheless an offer is no longer necessary. *Goldthwaite v. Day,* 149 Mass. 185, 21 N. E. 359. The plaintiffs by seeking to set aside the conveyance have elected to adopt all the consequences of rescission."

In *Knappen v. Freemen,* 47 Minn. 491, 50 N. W. 533, the court laid down this rule:

"When a party seeks to rescind a contract by his own act, he must give the other party notice of his decision and restore, or offer to restore, to him whatever he received from him under or by reason of the contract; in other words, he cannot repudiate its obligations and retain its benefits. When, however, he seeks the aid of the court to rescind the contract, it is not necessary that he should have previously attempted a rescission or that he should have made any tender to the other party, except where such tender might be necessary to put the other party in default; * * * but, although at one time the bill was demurrable if it omitted this offer, the requirement was in its nature formal. The offer was not one of the facts constituting

the cause of action any more than was the prayer for process. It may be doubted that the rule referred to still exists in the courts where equity rules of pleading are retained. *Colombia, Gov., v. Rothschild,* 1 Sim. 94; *Wells v. Strange,* 5 Ga. 22. These were suits for accounting. *Jervis v. Berridge,* L. R. 8 Ch. App. 315, was a suit for cancellation and rescission, and the offer in the bill was held not necessary. However, it may be where equity forms of pleading are retained, it cannot be under the code system, which requires a complaint to contain only a cause of action and the prayer for relief."

See *Coolbaugh v. Roemer,* 32 Minn. 445, 21 N. W. 472.

In *Carlton v. Hulett,* 47 Minn. 308, 51 N. W. 1033, discussing the same question, the court said:

"By submitting her case to the court, the plaintiff expressed a willingness to perform such conditions as it may regard necessary to impose as proper terms on which relief shall be granted. What such a plaintiff ought to do and what she must do to reinstate the other party *in statu quo,* as a condition for repudiation and rescission is for the court, which always possesses the necessary power to determine the question"—citing cases.

While this is not a suit to rescind a deed, but to remove a cloud on title by the cancellation of a void deed, yet the principle announced in the foregoing opinions is applicable and in harmony with the spirit, if not the letter, of the governing Code. We conclude, therefore, that under the record in this case it was unnecessary for plaintiff to formally allege an offer to do equity or offer to return the consideration received by her.

We are of the opinion that the question of what, if any, original consideration remained in the hands of plaintiff upon arriving at her majority, not having been determined, necessitates a reversal of the case; that either the plaintiff in error or the defendant in error Hattie Elliott should have the right to file any amended pleadings necessary to present this issue; and an accounting is ordered, to ascertain the sum paid defendant in error, what portion thereof, or property received in exchange therefor, she had in her possession on the date she became 18 years of age. That after restoration of the said sum, if any, the court may find due, with interest, as defined herein, within four months from the date of such determination, the judgment of the lower

court rendered and entered on May 4, 1909, become in all things effective.

The cause is therefore reversed as to plaintiff in error Stevens, and remanded, with instructions to proceed in accordance with this opinion.

By the Court: It is so ordered.

All the Justices concur.